SOPHIA WAGNER, as Administratrix, etc., of NICHOLAS WAGNER,. Deceased, Respondent, v. THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY, Appellant.

*Negligence — death of one employed on a platform derrick car caused by its toppling over — a derrick car is an appliance rather than a place — negligence, not imputed from the fact that the swinging of the derrick boom is controlled by winches connected with the engine — a failure to promulgate rules must be pleaded — when rules as to the anchoring of the car to the track are not necessary — the omission to do so by the superintendent is that of a fellow-servant.*

In an action brought against a railroad company to recover damages resulting from the death of the plaintiff's intestate, who, while at work upon a derrick car belonging to the defendant, was killed in consequence of said car's toppling from the track, it appeared that the derrick car was a platform car, fitted with a derrick, an engine and certain appliances for operating the derrick; that, when the derrick was in operation, there was danger that the car would topple over, if the boom of the derrick was allowed to swing at right angles with the length of the car, and that, in order to obviate such danger, windlasses and winches, operated by the derrick engine, were installed on the car for the purpose of controlling by means of a rope passing to the derrick the swing of the boom, and that the car was also fitted with hooks and other appliances by which the car could be securely anchored to the track; that, on the occasion of the accident, the derrick car was being used in loading stone upon a gondola car, and that the defendant's supervisor of bridges and buildings, who was in charge of the car, omitted to have the car anchored to the track, believing such action to be unnecessary; that while a stone was being raised by the derrick, the boom commenced to swing to a position at right angles with the car; that the defendant's superintendent called to the intestate, who was in charge of the appliances governing the swing of the boom, to check it, and that at about this instant the engine stopped working; the boom was not checked and the car toppled over.

It was not possible for the intestate to swing the boom back and forth by means of the appliances provided for that purpose unless the engine was in operation, although the evidence tended to show that he could have tightened the rope so as to hold the boom still. The engine, however, was not defective in any way and it did not appear why it stopped working at the time of the accident.

*Held*, that the derrick car was an appliance rather than a place in which the plaintiff's intestate was called upon to work;

That, as it appeared that the appliances controlling the swing of the boom were simple and easily understood, and absolutely effective unless some part thereof broke or the engine stopped working at an improper time, negligence could not be imputed to the defendant because of the nature of such appliances;

That the general allegations of the complaint would not permit the plaintiff to raise the question whether the defendant was negligent in failing to promulgate rules for the anchoring of the derrick car to the track;

That, assuming that the complaint was sufficient to enable the plaintiff to raise that question, the defendant could not be held negligent in such respect, as the anchoring of the car was a mere detail and incident of the work which the defendant could properly leave to the skill and judgment of its employees without promulgating any rules in reference thereto;

That the omission of the defendant's superintendent to anchor the derrick car to the track was the negligence of a fellow-servant of the intestate and not that of the defendant.

APPEAL by the defendant, The New York, Chicago and St. Louis Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chautauqua on the 23d day of April, 1902, upon the verdict of a jury for $3,875, and also from an order entered in said clerk's office on the 23d day of April, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Louis L. Babcock*, for the appellant.

*George E. Towne, J. B. Fisher* and *W. S. Thrasher*, for the respondent.

HISCOCK, J. :

This action was brought to recover damages for the death of plaintiff's intestate who was killed by being precipitated from defendant's railroad track into a ravine thereunder while at work upon a derrick car belonging to defendant. The accident was caused through said car being toppled off the track by the weight of a stone which was being raised. The trial justice permitted the jury to find that the defendant was guilty of negligence in not having a proper appliance upon the car for controlling the swing of the boom of the derrick by which the stone was being raised, and also in not promulgating rules for anchoring the car to the track and thus preventing it from being tipped over. We think that there was no evidence which entitled plaintiff to have the first stated ground of negligence submitted to the jury, and that the second one was not set forth in the complaint, and that, therefore, errors were committed which require the reversal of the judgment.

There was very little dispute about the facts upon the trial of the case.  Defendant at and for some. time prior to the time of the accident owned and operated this derrick car.  It consisted of a flat-bottomed car in the center of which, over the front trucks, was erected the derrick proper.  This derrick consisted in part of a perpendicular mast twelve feet high properly supported and fastened to the car.  To this mast was attached a boom about twenty-four feet long which could be revolved around the mast, the latter turning with it.  Originally the swinging of the boom was regulated by two men each working a rope which operated upon it.  If it was desired to swing the boom one way one of the men accomplished this by tightening or pulling upon his rope, and if the other way the other man did it by a similar process.  Some time prior to the accident this method of controlling the movement and location of the boom was changed.  Without going into all of the details of the latter method, it was, in substance, as follows: A rope passed around a large wheel near the bottom of and fixed to the mast and thence between and around a couple of revolving winches to another wheel or windlass in the shanty upon the derrick car to be hereafter referred to, and one man by operating this latter wheel or windlass could so operate the rope upon one or the other of the winches as to cause the boom to swing in either direction required.  The revolution of the winches was secured from power furnished by the steam engine which was used to raise and lower weights upon the derrick.  This latter result was secured in the ordinary way by a rope passing over the boom of the derrick and carried to a drum, which was put in revolution by the power of the engine.  There was a house or shanty upon the car wherein was located, amongst other things, the guide wheel or windlass already referred to, and beyond this the engine which furnished power for the derrick.  In this house also stood the men respectively who operated the wheel and the engine.  The house had openings in the front, rear and upon the sides.  Upon each side of the forward part of the car was fastened a strong hook, and there was furnished by the defendant and with the car at and before the time of the accident what was undisputedly a proper and sufficient appliance for connecting this hook with the track or any other proper object, and thus anchoring or fastening down the car and preventing it

from tipping over when a weight was being raised by the derrick. These appliances outside of the hooks were in the cabin where intestate was working at the time of the accident. Upon the trial no criticism was made upon that car, or any of these parts or appurtenant appliances, except those for swinging the boom above referred to, and, possibly, the capacity of the engine. The trial justice, however, charged, as matter of law, that the latter was sufficient, and not in any way defective.

It had become necessary for defendant to have a new bridge over a deep gulley upon the line of its road in Chautauqua county. This bridge had been put in by an independent bridge company, which, in the process of construction thereof, had used this derrick car for several days. After the bridge was completed the defendant was engaged in picking up and removing various debris which had been left. For this purpose it employed this derrick car, which stood over the gulley, and also another gondola car into was being loaded the timbers and stone to be carried away. One Cole, who was supervisor of bridges and buildings upon one division of defendant's road, was in charge of the work. Under him was one Cameron, who seems to have been the immediate boss or foreman of the gang, and various other workmen, including plaintiff's intestate. The latter was cranesman, and as such it was his duty to stand in the caboose upon the car above referred to and, amongst other things, operate the wheel or windlass which guided the swing and location of the boom of the derrick. The proper operation of the boom required that the outer end of it should be kept as near to the edge of the car as possible, allowing the rope to play and the stone or timber to be raised, and that it should not be allowed unnecessarily to approach a position at right angles with the length of the car. The nearer it approached this latter position the greater the strain upon the car and the tendency to tip it over. Some timbers and two heavy stones had been raised and deposited where desired, and at the time of the accident a third stone was being raised. There had been attached to the stone to be raised the derrick rope, and there was attached to the latter another independent rope which was held by Cole for the purpose of in some way controlling or relieving the strain upon the derrick, but his position was such that he could not by this latter rope prevent the boom from swinging toward a posi-

tion at right angles with the car. Plaintiff's intestate stood in the shanty looking out upon the side towards the boom and the stone that was being raised. After the latter had been partially raised the boom commenced to swing from a position near the side of the car to one at right angles with it. Cole called to intestate one or more times to stop the outward swinging of the boom or to pull it back towards the car. At about this instant the engine stopped working, the boom was not checked, the car was toppled over and the accident caused.

It was not possible for the man controlling its movements to swing the boom back and forth unless the winches over which the rope passed for controlling the boom were in motion and these were not in motion unless the engine was operating. We do regard it, however, as almost conclusively established that the operator could by his brake wheel or windlass so tighten the rope in question as to hold the boom still even though the engine was not operating and the winches not revolving.

Plaintiff's intestate had been in the employ of defendant and engaged in the work in question for some considerable time, and no claim is made that he was not familiar therewith or with the appliances in use at the time of the accident, including those employed to regulate the swinging of the boom. No question was presented as to the sufficiency or competency of the employees at work with intestate.

There has been some confusion in the course of this action about the precise theory upon which defendant might be held liable. In her complaint, plaintiff, after alleging that it was the duty of the defendant to provide a reasonably safe place for the decedent in which to work and "to provide all necessary means and appliances in the way of fastenings to attach and secure said car to said track or bridge while said blocks of stone were being hoisted, to prevent the same from being overturned and thrown off from said track * * * and to apply or to have applied such fastenings or anchor to said flat car," further alleged that the defendant, "not regarding its duty, conducted itself so carelessly, negligently and unskillfully in this behalf, that it did not provide and apply any fastening or anchor nor in any manner fasten, anchor or secure to the track or bridge or otherwise the said car upon which said der-

rick was, notwithstanding that it had due notice and knowledge that said derrick car was not a reasonably safe place in which to work for said decedent, without the same being anchored or fastened," and "that for want of due care and attention to its duty *in that behalf,*" the accident happened. Said complaint also contains the further allegation "that the said injury and resulting death of plaintiff's intestate was caused wholly by the negligence of the defendant in the operation of its cars, machinery and appliances and in providing an unsafe place to work and unsafe machinery, and wholly without negligence on the part of the intestate."

These allegations bound the charges of negligence against the defendant. The ones last quoted are general in their nature. They do not attempt to point out any way in which the accident was caused. They are to be construed in connection with the prior allegations of the complaint above quoted. The prior allegations point out the alleged specific misconduct of the defendant which caused the accident and by implication exclude the idea that it was caused in any other way. Under such circumstances we think it is a fair construction to place upon the later and general allegations of negligence that they do not vary, contradict or enlarge the prior specific ones, but simply in a general way cover and relate to the same alleged acts of negligence upon the part of the defendant there specifically and explicitly stated.

Upon the trial of the action the learned trial justice, after stating the general obligations of the defendant to furnish a reasonably safe place in which its employees might work and reasonably safe appliances and machinery with which they might labor, submitted to the jury two issues upon which they might find the defendant guilty of negligence. The first one was whether or not the appliances heretofore referred to for regulating and controlling the swing of the boom upon the derrick were proper and sufficient. The second one was whether the defendant should not have published and promulgated rules governing the anchoring of the car and the use of the appliances provided for that purpose. As already indicated, we think there was no sufficient evidence to present for the consideration of the jury the first issue and that the second one was not included in the complaint. In addition, we think that there was no evidence upon which the plaintiff was entitled to go to

the jury upon this last question even if it had been within the limits of her complaint.

Upon this appeal the learned counsel for the respondent, in addition to urging the liability of the defendant upon the grounds submitted at the trial, has also insisted that the trial justice committed error in holding that Cole, who omitted to cause the car to be anchored, and plaintiff's intestate were co-employees, and that, therefore, there could not be a recovery by reason of such failure to anchor the car.

In passing to the consideration of these questions, while we do not regard it as of especial importance in this case, we may say preliminarily that we think this action deals with an appliance rather than with a "place" in which plaintiff's intestate was called upon to work. This derrick car was operated and used as a single and entire piece of apparatus. It was moved from place to place as desired and used for certain well-defined purposes. All of its parts were related to each other in such use and operation. We think it would be too narrow a view to regard the derrick proper as a piece of machinery, and the platform of the car to which it was fastened and which was used in connection with its operations, in the light of a shop or place wherein the employees worked.

We consider first the question of the sufficiency of the appliances and methods furnished and employed by defendant for controlling the swing of the boom. The allegations of defective character and insufficiency, as we understand them, are three-fold in number: *First*, they were comparatively new and supplanted the old method of employing two men each with a rope working upon the boom; *second*, the witnesses sworn upon the subject had never seen similar ones upon cars of other roads; *third*, if the engine stopped the appliances would not fully work. We do not find in these criticisms and the evidence given in support thereof any sufficient basis for permitting a jury to find the defendant negligent in this respect in the face of the other undisputed evidence upon the subject. The evidence permits no question but what these appliances were simple and easily understood, and absolutely effective unless some part thereof broke or the engine stopped working at an improper time. As already stated, it was expressly held that the engine was sufficient for the purpose of operating the boom. In order to permit

the defendant to be found negligent we must, therefore, hold that it was bound to assume either that something would break or that an employee would be careless in the operation of the engine. Nothing did break, and it is not at all clear what caused the stoppage of the engine, but certainly, under the charge of the court, it was not any defect in the engine, and if the employee operating it was careless and disobeyed his orders or the known necessities of the case, we do not think the defendant was responsible therefor. We entirely pass over at this point the other question, whether plaintiff's intestate was not himself guilty of carelessness in allowing the boom to swing around as it did.

We have indicated our opinion that the general allegations of negligence set forth in the complaint should be held to relate to the alleged wrongful acts of the defendant by other allegations so specifically set forth as the cause of the accident as to exclude the idea of another cause contributing thereto. If, however, we are wrong in that view, we feel entirely clear that said general allegations were not sufficient to permit plaintiff to prove as a ground of liability upon the part of defendant that it did not promulgate rules with reference to anchoring the car. Without going into technical rules covering the question whether pleadings should be construed more strongly for or against the pleader, it certainly is a principle of common sense as well as of good pleading, that the complaint should fairly set forth the grounds upon which the pleader intends to rely. We do not think that a careful and liberal reading in behalf of plaintiff of the allegations in the complaint in question would reasonably and naturally suggest as a cause of complaint against defendant that it did not promulgate rules upon the subject in question, and that, therefore, it was improper to allow the question of its duty so to do to be submitted to the jury.

Moreover, if we should assume that this issue was presented by the complaint, and that, therefore, it was a proper one if supported by evidence to submit to the jury, we should feel obliged to hold in this case that there was no such sufficient evidence to warrant such submission. We think that the attachment to the derrick car of the appliances furnished by the defendant for the purpose of anchoring it was a mere detail and incident of the work which was of necessity left to the skill and judgment of the employees who

were engaged in operating it. We think that the use and purpose of said appliances involved very simple processes which were entirely within the experience and comprehension of defendant's employees and which did not permit the defendant to give any material aid through rules. It was perfectly apparent to the men who were operating this car that some articles to be raised were so light that there could be no possibility of tipping over the car, and that other articles to be raised which were much heavier would put a much greater strain upon the car and increase the liability of its toppling. It was perfectly evident to such employees that when the boom was kept close into the car no such strain was imposed as when it was swung out into a position at right angles with the car. It was perfectly evident to them that if they used the appliances provided and anchored the car to the track there was scarcely a possibility of its being tipped over by any load or strain whatever. The car was being moved from place to place, and was engaged in lifting all manner of loads. The control of the location of the boom was entirely within the control and operation of the men upon the car. We think it would have been a practical impossibility for the defendant to formulate any set of general rules governing the anchoring of the car which would have been useful, and that it had a perfect right to allow the use of appliances so simple as these were to be regulated by the experience and judgment of those who were using them.

The views which we entertain upon this last question would naturally lead us to sustain the ruling of the trial justice that, as to the operation of this derrick car and the use of the appliances for anchoring it, defendant's employee Cole and plaintiff's intestate were co-employees. While the former was a superior of intestate and was defendant's superintendent as to certain work within certain limits, we think that they were both engaged as fellow-employees in doing the work in hand at the time of the accident. Cole testified that the anchor was not affixed upon this occasion because he did not regard it as necessary. His judgment was rendered erroneous by the fact that the boom was allowed to swing out as it did. Otherwise his opinion undoubtedly would have been correct and the accident would have been avoided. But, independent of this, we think that all of defendant's employees were engaged

together in using the derrick, and that when Cole failed to apply the anchor he was dealing with a feature incident to the work and was acting as a co-employee and not in the place of an employer.

The conclusions reached upon the foregoing propositions render it unnecessary to pass upon the other question presented of freedom of plaintiff's intestate from contributory negligence.

In accordance with our determination upon the propositions considered, we think that the judgment and order appealed from should be reversed.

McLENNAN, SPRING, WILLIAMS and DAVY, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.