landlord in a position to compel the payment of his rents, or be restored to his possession of the premises, that he may rent them to persons who will pay, and when the proceeding has resulted in either of these ends it has accomplished all that the Legislature intended, and there is no jurisdiction in the courts to grant other relief. To hold that it was necessary to issue a formal order of removal, after there had been a tender of all that the law could compel, before the tenant could be placed in a position to take advantage of the provisions of section 2254 of the Code of Civil Procedure, is to make the administration of the law ridiculous, and, in the absence of controlling authority, this court will not hold such a rule. The order appealed from should be affirmed, with costs.

Final order affirmed, with costs. All concur.

---

WAGNER v. NEW YORK, C. & ST. L. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. MASTER AND SERVANT—APPLIANCES—EVIDENCE.
 In an action for negligent death of an employé from the tipping of a derrick car not properly anchored, evidence *held* insufficient to sustain a finding that the employer had not furnished suitable appliances for anchoring the car.

2. SAME—CONTRIBUTORY NEGLIGENCE.
 One who had been employed as cranesman on a derrick car for nearly a week, and had assisted every morning in anchoring the car, was guilty of contributory negligence in failing to anchor it on the day of his injury.

3. SAME—ASSUMPTION OF RISK.
 One who was familiar with the danger of working on a derrick car as cranesman without anchoring the car assumed the risk of his injury resulting from his failure to anchor it.

Appeal from Trial Term, Chautauqua County.

Action by Sophia Wagner, administratrix of the estate of Nicholas Wagner, deceased, against the New York, Chicago & St. Louis Railroad Company. From a judgment in favor of plaintiff and an order denying a new trial, defendant appeals. Reversed.

See 78 N. Y. Supp. 696.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Rogers, Locke & Milburn and Louis L. Babcock, for appellant.
Towne & Smith, for respondent.

WILLIAMS, J. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide event.

The action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant. The defenses were that the defendant was not guilty of the negligence which caused the accident and death, and the intestate was

¶ 3. See Master and Servant, vol. 34, Cent. Dig. § 584.

not free from negligence, and that he assumed the risk of the accident which resulted in his death. The intestate was cranesman upon a derrick car standing on a bridge, and with other employés of the defendant was engaged in hoisting stone from a ravine below and loading them upon a gondola car. The derrick car was not anchored, and while raising a stone the car toppled over into the ravine below, and the intestate was killed. The action was first tried in 1902, and a verdict was rendered in favor of the plaintiff upon the ground that the defendant was guilty of negligence in not having a proper appliance upon the derrick car for controlling the swing of the boom of the derrick by which the stone was being raised, and also in not promulgating rules for anchoring the car to the track, and thus preventing it from being tipped over. Upon appeal to this court we reversed the judgment entered upon that verdict, and ordered a new trial (76 App. Div. 552, 78 N. Y. Supp. 696), holding that there was no evidence which entitled the plaintiff to have the first ground of negligence above submitted to the jury, and that the second ground was not set forth in the complaint, and there was no evidence entitling the plaintiff to submit that question to the jury if properly alleged in the complaint. There was apparently no controversy upon that trial as to the presence in the car of adequate appliances for anchoring the same. Upon a second trial (the result of which is now here for review) the plaintiff secured a verdict from a jury upon the ground that the defendant was negligent in not furnishing suitable and sufficient appliances for anchoring the car. The evidence was conflicting as to the presence in the car of a turn-buckle, and the jury have apparently found no such appliance was there. The parties agreed that there was a chain in the car suitable for anchoring the same when the work was undertaken, but before the accident occurred that chain had been taken into the ravine, and was being used about the stones as they were raised. There were concededly in the car all the time the work was being done and at the time of the accident two ropes—one an old hoist rope 100 feet long, somewhat worn, and no longer sutiable for use as a hoist rope; and also a manilla inch line over 100 feet long, in good condition; and some other short pieces of rope. The verdict therefore must have been based upon the proposition that the accident and death resulted from the failure or neglect to have a turn-buckle and chain in the car, although these ropes were there. In other words, that the ropes alone were not suitable or sufficient appliances for anchoring the car. The verdict upon this ground was contrary to the evidence, against the weight of the evidence. There was a hook upon the car under the platform only three or four feet from the rail of the track, and the bridge structure was just below. A chain would have been more convenient to apply, and a turn-buckle would have enabled the men to draw the chain closer, and make it more rigid; but that it was possible to anchor the car without either a chain or turn-buckle by the use of ropes, that it was easy to do so, cannot be doubted. Evidence was given upon the trial that it could be so done, and that it was so done when a chain and turn-buckle were not at hand. This was not disputed, and could not well be. The car on this occasion stood over the bridge. The ropes could have been passed over the hook upon the car and drawn

closely about the rails, ties, or bridge structure below. It was but a short distance—four to five feet. The ropes in the car were entirely sufficient to securely hold the car in place, so this accident would not have occurred. The hoist rope, though somewhat worn, and therefore not strong enough to use for hoisting where the strain would be for a considerable portion of its length, was not shown to be inadequate to bear the strain upon a few feet of its length, especially if it was doubled or trebled in anchoring the car. The other rope, one inch in diameter, was concededly in perfect condition, and could have been many times doubled so as to securely hold the car from toppling over into the ravine below. The car remained in its place without any anchoring while other stones were being raised and while the stone which tipped the car over was raised a part of the way. It would apparently have required no very strong fastening of the car to have counteracted the weight of the stone, and have kept the car in its place. Under this undisputed condition of things a verdict should not be upheld, based upon such a finding of negligence. The accident was certainly the result of failure to have the car anchored when the stone in question was attempted to be raised, and we are unable to see how the defendant was responsible for such neglect.

The court upon the last trial charged the jury that there was no evidence that there was any defective condition of the engine, car, or any of the macinery used in doing the work; that the only cause of the accident was the failure to anchor the car; that the anchoring of the car was a detail properly intrusted to the men engaged in the work, and that the men doing the work were co-employés of the intestate, for whose negligence plaintiff could not recover. The evidence shows that the intestate and the other men engaged in this work were experienced in such kind of work. The intestate was a bridge builder, and had been in the defendant's employ for nearly 10 years, having worked upon nearly every bridge upon the line of its road. This derrick car had been loaned by the defendant to the bridge company that was building the bridge where the accident occurred, and had been operated for nearly a week just prior to the accident in their work, the intestate operating the crane all that time; and the car was anchored during the time the bridge company was using it, and the intestate and another workman did the anchoring every day. A turn-buckle with a chain was then in use. It belonged to the bridge company, and it does not appear that it was not about the work, though the jury have found none was in the car. These men, we must assume, could easily have obtained a chain for anchoring purposes if they regarded anchoring necessary. Chains are not so uncommon that their mere absence from the car could excuse the men from anchoring the car. The theory of the plaintiff must be that these men would have used the appliance and anchored the car if such appliances had been handy near by in the car, but, inasmuch as they were not within easy reach, these experienced men sent out to do this work, intrusted with its detail, could not be expected to look about and get a chain or turn-buckle, but to proceed in the dangerous way they did; and therefore the neglect that caused the accident and death was that of the defendant itself in not having a chain and turn-buckle handy near by, right in the car. We do not

regard this as a fair ground upon which to base a recovery in the case. But assume the plaintiff can escape this difficulty, what are we to say about the questions of contributory negligence and assumed risk? We have already referred to the position of the intestate, his knowledge and experience in this kind of work. How could the jury fail to conclude that he knew and understood the need—the necessity—for anchoring the car in doing the work they were engaged in, the danger to be apprehended in doing the work without anchoring the car? The evidence tends to establish that he knew and understood as well as the defendant could the whole situation, and, more than this, that he and the engineer talked about the need of anchoring the car just before the accident occurred, at a time when he might have left the car and refused to work further until such anchoring was done—until in fact he had done it himself; but inasmuch as the chain, and perhaps the turn-buckle, were not in the car, that he went on with the work with full knowledge of the danger to himself and the other workmen; that he was negligent and careless himself; and yet it is said the defendant should respond in damages for his death—a death resulting from his alleged carelessness, and the risk of which death it is alleged he voluntarily assumed. The verdict can only be sustained upon the theory that the jury found the deceased was free from negligence, and did not assume the risk. Both of these findings would be contrary to the evidence—against the evidence—in the case. Our conclusion therefore is that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event.

Judgment and order reversed, and new trial ordered, with costs to abide event upon questions of law and facts. All concur.