by Logan to aid Evans. If the plaintiff expected the whole title for $20,000, why did it accept half for that sum? Logan was the chief power in the company; he understood what its rights were, and his recognized ability enabled him to protect its finances. It is evident that the company was satisfied to accept one-half of the mine for $20,-000.

The judgment should be affirmed.

---

EDGAR v. BROOKLYN HEIGHTS R. CO. et al.

(Supreme Court, Appellate Division, Second Department. October 6, 1911.)

1. MASTER AND SERVANT (§ 278*)—STREET RAILROADS—INJURY IN CAR BARN— NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action against a street railway company for injury to a depot master in a car barn, caused by a car shifter operated on a cross-rail striking him, evidence *held* insufficient to show negligence of the company in failing to provide a reasonably safe place for work or to promulgate rules or to equip the shifter with a brake or headlight.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 107*)—SAFETY OF PLACE OF WORK.

An employer's duty to provide a reasonably safe place of work does not involve the following up of the details of work and seeing to it that the conditions brought about by progress of the work are at all times such as to afford a reasonably safe place.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199– 202, 212, 254, 255; Dec. Dig. § 107.*]

3. MASTER AND SERVANT (§ 264*)—NEGLIGENCE—PLEADING.

An employer's negligence in failing to promulgate rules as affecting liability for personal injury must be pleaded and proved.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 264.*]

4. MASTER AND SERVANT (§ 265*)—DISCHARGE OF EMPLOYER'S DUTY—PRESUMPTION.

In the absence of evidence on the question, it is not presumed that an employer has failed to discharge any of his duties.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877– 908; Dec. Dig. § 265.*]

5. MASTER AND SERVANT (§ 219*)—RISKS ASSUMED BY EMPLOYÉ.

An employé suing for negligent personal injury under the common law, and not under the employer's liability act (Consol. Laws 1909, c. 31), is deemed to have accepted the obvious risk of his employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610– 624; Dec. Dig. § 219.*]

Appeal from Trial Term, Kings County.

Action by Thomas J. Edgar against the Brooklyn Heights Railroad Company and another. From a judgment for plaintiff and from an order denying a new trial, defendant Railroad Company appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, CARR, and WOODWARD, JJ.

D. A. Marsh, for appellant.
Clifford C. Roberts, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

WOODWARD, J.  The plaintiff ought not to succeed in this action. His complaint alleges that he was in the employ of the Brooklyn Heights Railroad Company on or about May 30, 1907, and for some time prior thereto, as depot master in the car barn of the defendant. (The second defendant appears to have had no relation to the accident, and will not be considered in this discussion.)  The actionable negligence is alleged as follows:

"That at the time and place aforesaid, while the plaintiff was in the proper discharge of his duties as an employé of the defendant the Brooklyn Heights Railroad Company, and while crossing the car tracks running along and over the floor of said car barn or station, the defendants, their agents and servants, negligently, carelessly, and recklessly operated a car or shifter on a cross-rail situated and running along and over the floor of said car barn or station in the rear thereof, in such manner that said car or shifter, operated as aforesaid, ran into and struck the plaintiff, throwing him violently to the floor of said car barn and inflicting upon him serious and permanent injuries.  That said accident and injuries were caused by reason of the negligence, carelessness, and recklessness of the defendants, their agents and servants, and without any contributory negligence on the part of this plaintiff, and because of defects in the tools, machinery, and appliances of said car or shifter, and by further reason of the fault, negligence, negligent ways, and omission of duty of the defendant the Brooklyn Heights Railroad Company in that it failed to furnish the plaintiff with a safe place in which to perform his work."

The complaint then alleges the service of the notice required by the employer's liability act (Consol. Laws 1909, c. 31) and demands judgment for the damages.

Upon the trial the plaintiff testified:

"I was working at that time as night depot master.  I had been night depot master in this barn about ten days.  Before that I was a day depot master in the same barn for about two months.  My duties in the barn were to receive cars that were sent there from other depots;  also to send cars away, as ordered to be shifted to other depots.  *  *  *  This car barn was used for the storage and repair of cars.  The barn ran from Second to Third avenue and from Fifty-Eighth to Fifty-Ninth street.  The barn from Second to Third avenue was about 600 feet long.  *  *  *  The short way was about 200 feet.  *  *  *  There was 14 tracks in the barn, coming in off Third avenue."

It appears from his testimony that this car barn had three floors, and that the cars came into this barn on the third floor, where the accident occurred, from Third avenue at grade or practically so. Fourteen of these tracks came into the barn, and cars could be switched from track one to two, but, if a change was desired from track one to three, it was necessary to use the shifter which the defendant had installed for that purpose.  This shifter consisted of a skeleton car, with a platform upon it, operated upon a railroad track running at right angles with the switch tracks on which the cars entered.  This track ran the entire length of the building from Fifty-Eighth to Fifty-Ninth streets, and upon the platform of the shifting car there were rails extending out from the sides, tapered down so that, when the shifter was placed opposite the switch tracks, these arms came into close connection with the switch rails, and the cars could be moved upon the platform and then taken to the other tracks and pushed off onto such tracks.  This shifting apparatus was oper-

ated by an electric motor, controlled by the operator, and was in practically constant use in shifting cars from one track to another in the practical work of making repairs and sending out the cars, and it was the plaintiff's duty to superintend this car barn, though it appears that the actual work of making the repairs was in the charge of one Entwistle, who was in the employ of the Transit Development Company. This cross-track on which the shifter ran was well toward the back or Second avenue side of the car barn, and the space between the shifter and the rapair shop was used principally for the storage of cars and repair work. It appears from the evidence, which was received over defendant's objection and exception, that different styles of shifters were used upon the other two floors of the car barn, and that the one on the third floor, which was put in as an improvement, had been in operation for at least four months at the time of the accident, and that the plaintiff was entirely familiar with its operation, though he did not usually operate the same. After describing this shifter and the others in detail, the plaintiff continued:

"Coming down to the night of my accident, I got to work at 7 o'clock in the evening. My hours were from 7 at night till 7 in the morning. After I had got there to the barn, there were cars in there. First off I gave the instructions to the boss car cleaner about cleaning his cars. Then I proceeded to the rear of the barn towards Second avenue. * * * At that point I met the night shop foreman, James Entwistle," and had a conversation with him in reference to getting out two cars which he had orders to send away.

The witness then described how certain cars were moved around to clear the way for moving the cars which he desired to get out, and says:

"I got down off the car and turned to my left. Then I started to walk over towards Third avenue. I walked about half a car length, and just as I got to the step of the car—of the car that was standing on track four—I was struck by the arm of the shifter, which went under the platform of this standing car. I was thrown down, and I was severely hurt. I did not see the shifter come along. It came from Fifty-Ninth street. The light there was very dim; I could not see. * * * I did not hear any warning. The first thing I knew I was thrown down."

The evidence shows that the plaintiff, familiar with the working of this shifting device, asked Entwistle to move a car from one track to another by the use of the shifter; that while this was being done he, with the assistance of another man, moved two other cars along on one of the switches; that, having placed the last car to his satisfaction, he started toward Third avenue, at a point where the shifter was out of his sight by reason of a car located upon track four; and that the arm of the shifter, coming back for the purpose of completing the work, in its natural and usual operation, passed under the front of the car obscuring the vision of the plaintiff, causing the accident. There is not a particle of evidence to show that the shifter was negligently or carelessly operated, or that there was any defect in its construction or in its machinery, or in any other respect. It is true that there was testimony that there was no headlight upon the shifter, that it had no gong and no brake, but there was no evidence that there was any use of a brake, or that any other similar apparatus

in use was equipped with a headlight or with a gong, or that any one had ever suggested such equipment for this shifter or for any other. While there is the plaintiff's testimony to the effect that the place where he happened to be, behind the car on the fourth track, was dark, and there is some evidence from which the inference might be drawn that the place was not light enough for some purposes, there is absolutely no evidence in the case from which the inference could be fairly drawn that the barn was not light enough so that this shifting device could be seen from all parts of the barn where the view was unobstructed, or from which the inference might be drawn that in the reasonable and ordinary operation of such a device a headlight would be necessary. There was evidence that there were some six or seven arc lights in the barn. It was used night and day for a period of at least four months with this same equipment in the repair and distribution of cars, and there is not the slightest evidence that any one had complained of a lack of light in the premises, or that the shifter should be equipped with a different light from that with which it was concededly supplied. The undisputed evidence is to the effect that Entwistle stopped the shifter within less than two feet from the moment he heard the plaintiff's cry on being struck, and how a brake could have stopped the shifter sooner it is difficult to understand, and the suggestion of a gong is equally devoid of evidence to indicate that it was any defect in construction. No one ever suggested, so far as this record goes, that a shifting device, designed to be used upon a track not over 600 feet in length, operated at the rate of a mile an hour, where there was no reason to expect the presence of any one not familiar with the work and in a position to observe it, should be provided with a gong, and the learned trial court very properly instructed the jury that there was no negligence to be imputed to the defendant by reason of the use of this shifter, or by reason of the failure of the defendant to provide it with the equipment here suggested. There was no evidence of any defect in the ways, works, or machinery of the defendant at the time and place of this accident; no evidence of any negligence on the part of any one intrusted with the duty of superintendence, so that the case does not come within any of the provisions of the employer's liability act, and it must be treated, therefore, as a common-law action for negligence.

[1] Tried by this standard, there is clearly no cause of action. The suggestion that the defendant had not provided a reasonably safe place for the plaintiff to perform his work is not supported by any evidence. The car barn was the place provided for him to work; he was night depot manager, and the depot was this car barn. There is not a particle of evidence from which the inference might be drawn that there was any defect in the construction or condition of the building itself; no evidence from which it can be fairly said that the shifting car was not properly constructed for the performance of its particular work; and the plaintiff himself admits that he had full authority in reference to the locating of the cars, so that, if the cars were stored too closely to the shifting track, he alone was responsible for

131 N.Y.S.—19

that condition. Nor is he relieved from this responsibility by the fact that the accident appears to have occurred soon after he came to work.

[2] The duty of the employer does not involve the following up of the details of the work and seeing to it that the conditions brought about by the progress of the work are at all times such as to afford a reasonably safe place; the duty of the master is performed when the place is made reasonably safe for the performance of the work and kept in that condition, without reference to the changes brought about by the performance of the work itself, and, if the cars were stored too near to the shifter to be safe, the negligence was that of a fellow serv-ant in allowing them to be so placed in the first instance, and the neg-ligence of the plaintiff in permitting them to remain there after he had come upon the premises to take up the work where the day man-ager had left it.

It must be equally clear, it seems to us, that the plaintiff did not establish any negligence on the part of the defendant in failing to promulgate rules for the conduct of the affairs of the corporation in this car barn.

[3] In the first place, the plaintiff did not allege any negligence in this respect, and it is not questioned that this is a matter which must be pleaded and proved. Wagner v. N. Y., Chic. & St. Louis R. R. Co., 76 App. Div. 552, 559, 78 N. Y. Supp. 696; Murphy v. Milli-ken, 84 App. Div. 582, 82 N. Y. Supp. 951. No evidence was offered tending to show that the defendant had failed to establish proper rules, or that any rule which was practicable and reasonable could or should have been devised by the defendant under the circumstances shown to exist to obviate the danger, which was known to the plain-tiff, and which was as obvious as any danger well could be.

[4] In the absence of all evidence to the contrary, the master is presumed to have done his duty; or perhaps it is more accurate to say that, in the absence of all evidence upon the question, there is no pre-sumption that the master has failed in the discharge of any duty which he owes to his servant, and under the evidence in this case no such question was presented either by the pleadings or by the evidence, and the only mention of the absence of rules is found in the charge of the court, and here only in an incidental manner. It might be said here, as in Morgan v. Hudson River Ore & Iron Company, 133 N. Y. 666, 669, 31 N. E. 234, 235, that:

"The recovery was based entirely on the absence of rules. It was not suggested at the trial, nor is it on this appeal, what particular rule the de-fendant could have adopted that would have been likely to prevent the acci-dent. No evidence was given that any rule is in use in business of a similar character by other corporations of the same class carrying on like operations, nor was there any evidence by experts or other witnesses to show that any rule was necessary or practicable in such cases. It was left to the jury to say whether or not it was a case for rules, and, if so, what particular rule should have been adopted. We know nothing with respect to the views en-tertained by the jury on these questions, except so far as they are indicat-ed by their verdict for the plaintiff. It is not probable that they concluded that any definite rule should have been promulgated, but were content to hold that as the plaintiff was injured the defendant ought in some way to have prevented it, or, in case it did not, respond to him in damages. Almost

every conceivable injury that a servant receives in the course of his employment may in this way be submitted to a jury, and with the same result."

The accident here under consideration happened solely by reason of the fact that Entwistle, after taking a car away, brought the shifter back to the place where the plaintiff desired it for the purpose of getting out the two cars, and the plaintiff stepped in the pathway of the shifter, without letting Entwistle know of his presence, relying, as the plaintiff himself testifies, upon the thought that Entwistle would stop the shifter at some point for some reason before he got back there. He admits that he did not look in either direction for any possible danger, and the whole case is suggestive of the thought that the purpose of the litigation is to get compensation from the defendant for something it is in no legal or moral sense responsible for. The situation was one not likely to exist generally. There was no evidence in the case which showed any necessity for the depot manager to be engaged in the actual details of the work; no evidence to show that it was necessary for him to be at the point where he was injured, and the fair inference from the testimony is that he assumed to aid in the work and negligently walked into the pathway of this shifting device at a time when he had every reason to exercise some degree of care, without so much as a thought of his own safety. There is no evidence of the exercise of any degree of care to avoid the accident, and the danger to be apprehended was as obvious to the plaintiff as it could have been to any one.

[5] The action being for negligence under the common law, and not within the scope of the employer's liability act, the plaintiff must be deemed to have accepted the open and obvious risks of his employment, and the defendant's motion for a new trial upon the grounds that the verdict was contrary to the evidence and contrary to the law should have been granted.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event.

JENKS, P. J., and CARR, J., concur. HIRSCHBERG and BURR, JJ., concur in result.