OWEN SULLIVAN, administrator, *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.    November 23, 1893. — March 27, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Personal Injuries — Railroad — Master and Servant — Assumption of Risk — Action.*

In an action against a railroad corporation for personal injuries occasioned to A., who was in the defendant's employ as a track repairer, the plaintiff's evidence tended to show that A. and three other track repairers, one of whom acted as foreman, were sent to do work on the tracks, taking with them a small platform car provided with handles at each corner for lifting or pushing it, on which to carry their tools; that, as they were proceeding on their way, all being engaged in pushing the car, a " wild " engine, so called, running outside of any schedule time, and of which the men had had no notice, came around a curve in the railroad behind them about two hundred and twenty-five feet away; that, owing to the curve, the engine could not have been seen by the men any sooner, although the foreman kept constant watch for any train approaching in either direction; that they heard no whistle, or bell, or other warning, until the engine was within sixty feet of them, when two short whistles were given; that as soon as the engine was discovered the men made a motion to lift the car off the track, but the foreman told them not to do so but to give the car a push and get out of the way; and that thereupon all the men gave the car a hard push, and the other men jumped to one side and were not harmed, but A., whose movements were not observed by the others, was struck by the engine and injured. It appeared in evidence that it was a part of the duty of trackmen to look out for " wild "

engines; and that they had no other means of protection except to take care of themselves. One of the defendant's rules provided that "wild trains . . . must run cautiously around curves and over grade crossings, looking out for trackmen." *Held,* that the rule had reference to the safety of the train, and not of the trackmen; that the court could not say that A. was subjected to any danger beyond that of which he took the risk; and that the action could not be maintained.

TORT, under St. 1887, c. 270, by the administrator of the estate of William Sullivan, for personal injuries occasioned to the intestate, while in the defendant's employ, by the alleged negligence of the latter. Trial in the Superior Court, before *Fessenden,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff offered evidence tending to show that the defendant was a corporation owning and operating a railroad between Worcester and Winchendon, and running through the town of Hubbardston; that the plaintiff's intestate, William Sullivan, was in the employ of the defendant as a track repairer, and had been so employed about four years, and was about thirty-five years of age; that soon after seven o'clock on the morning of December 28, 1891, Sullivan, with three others, named Wead, Clary, and Lewis, was sent by one Denny, a foreman of the defendant having charge of the track repairers, from the defendant's depot in Hubbardston to work at a point on the tracks three quarters of a mile from the depot towards Gardner; that Wead was acting as assistant foreman, having charge of the men while at work, in the absence of Denny, the foreman; that the workmen took with them a small platform car called a "push" or "dump" car, provided with handles at each corner for lifting and pushing the same, on which to carry their tools; that there was a curve in the road at a point about half a mile from the depot; that the men were proceeding on their way and had passed this curve, all engaged in pushing the car, when they discovered a locomotive of the defendant, with a tender and small car or caboose attached, approaching them from behind in the same direction, and in charge of an engineer and fireman; that this was a "wild" engine, running outside of any schedule time, and of which the workmen had had no notice; that when first seen by any of the workmen the engine was just coming in sight around the curve, and was about two hundred and

twenty-five feet away; that owing to the curve the engine could not have been seen by the workmen any sooner; that Wead, the boss of the gang, was constantly watching for any approaching train, and kept looking around each way; that when the engine was discovered, and until it had passed them, neither Wead nor the other workmen who were with Sullivan knew or could tell what kind of a train it was, or what the engine was attached to; that when the engine was first discovered all the men were pushing the car, one at each corner, Sullivan being at a rear corner of the car outside the rail; that as soon as the engine was discovered the men at first made a motion to lift the car off the track, but Wead told them not to do so, but to give the car a push and get out of the way, in order, as Wead alleged, that the tools should not be thrown on to the men by the collision; that thereupon all the men gave the car a hard push, and then the three others jumped to one side and were not harmed; that at the time of letting go the car and jumping neither of the men observed whether Sullivan jumped away or not, and neither of them observed Sullivan after giving a push to the car; that the men with Sullivan jumped at the same or nearly the same instant, and had barely time to get out of the way when the engine struck the car; that the distance from the point where it finally stopped was about thirteen hundred and fifty feet; that the engine had sounded no whistle, no bell was rung, and no other warning given, so far as the men knew or heard, until it was within sixty feet of the men, when two short whistles were given; that when the engine stopped Sullivan was found upon the front of the engine; that after the collision Clary, one of the workmen, walked up the track to where the engine was standing, and there found Sullivan in the caboose; that he took him by the hand and asked him if he was dead, and if he knew him, and thereupon Sullivan gave Clary's hand a motion, and that he felt a motion of Sullivan's hand on his own; that at this time Sullivan was breathing or gasping; and that the engine at once returned to the depot at Hubbardston, and after its arrival there Sullivan was taken to Gardner, a distance of seven miles, and there found to be dead.

There was also evidence, objected to by the defendant, tending to show that when the engine passed the depot at Hubbards-

ton, before the accident and soon after the workmen had left the depot, it was going at a rate of speed equal at least to the speed of ordinary passenger trains when at full speed between stations; and that in crossing or before reaching two highways at grade, one near the depot and the other some distance below it, and both in sight of the depot, or within hearing of persons at the depot, after passing the same, no whistle was sounded, no bell rung, and no other warning given by the engine.

Evidence was also offered by the plaintiff to show that the station agent at Hubbardston depot, who also operated the telegraph at the station, was absent from his post on that morning, no one taking his place, and did not appear until about eight o'clock; that he was usually there about seven o'clock; and that Denny did not, upon this particular morning, in accordance with his custom, in order to protect himself and the other men, attempt to find out from the telegraph operator the condition of the track regarding the running of trains, for the reason that he knew of the absence of the telegraph operator.

The plaintiff also offered evidence of printed rules of the defendant, as follows:

" An order to ' run wild' conveys no rights over any train, and wild trains must keep ten minutes out of the way of regular and extra trains. They must run cautiously around curves and over grade crossings, looking out for trackmen, and must keep out of the way of 'switchers' within yard limit. They may run ahead of freight trains by protecting themselves.

" The engine bell must be rung for a quarter of a mile before reaching every highway crossing at grade, and until it is passed; and the whistle must be sounded at all whistling posts."

It appeared in evidence that the trackmen never had any information as to trains that were running wild, except upon inquiry of a telegraph operator, who informed them when he had the information; that it was a very common thing to have wild trains and engines running over the road, but seldom so early in the morning; that very frequently no notice at all was given when a wild train or engine was coming; that it was a part of the duty of trackmen to look out for these wild trains and engines as far as they could, and that they had no other means of protection except to take care of themselves; that a train was

liable at any moment to come along, and, if the men were out on the road away from the telegraph station, there was no way of warning them except by the approaching train; and that there was nothing in the position of the deceased which would require more time for him to get out of the way than it would for the other men. It was not claimed that Wead was a person in the general exercise of superintendence, whose sole or principal duty was that of such superintendence, but he worked upon the track like the other men, and had no authority except in the absence of the section foreman, when he was the temporary foreman of the gang, and was so acting at the time of the accident.

It further appeared that no one but Sullivan received any injury; that when the order was given by Wead to push the car, Sullivan took hold of the handles and pushed with the rest; and that when Wead gave the order to push the car Sullivan turned around and looked at the locomotive, as did all the other men.

The defendant offered no evidence; and the judge ruled, at the defendant's request, that the evidence was insufficient to maintain the action, and directed a verdict for the defendant. The plaintiff alleged exceptions.

*J. B. Goodrich*, for the plaintiff.

*G. A. Torrey*, for the defendant.

HOLMES, J. The bill of exceptions states that it appeared in evidence that it was a part of the duty of trackmen to look out for wild trains, and that they had no other means of protection except to take care of themselves. We do not regard this statement as qualified by the defendant's rule that wild trains " must run cautiously around curves and over grade crossings, looking out for trackmen," but accept the interpretation put upon the rule by the defendant's counsel, that the caution has reference to the safety of the train, not of the trackmen. In this case the other persons on the hand-car escaped, and why the deceased failed to do so does not appear. In the opinion of a majority of the court we cannot say that he was subjected to any danger beyond that of which he took the risk. *Shepard* v. *Boston & Maine Railroad*, 158 Mass. 174. *Lynch* v. *Boston & Albany Railroad*, 159 Mass. 536.

*Exceptions overruled.*