JAMES TUMALTY, administrator, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    November 12, 1897. — January 8, 1898.

Present: HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Death — Due Care of Plaintiff's Intestate.*

Where, in an action against a railroad company for causing the death of the plaintiff's intestate, who, while in the employ of a switch and signal company, was with his fellow workmen engaged at dusk in making changes in the switches and apparatus connecting them with a signal tower on the defendant's railroad, the place being one of great danger even in the daytime, the evidence shows that the intestate and his fellow workmen were taking no precautions whatever to guard against being run over, although a locomotive engine might be there at any moment, the plaintiff fails to sustain the burden of proof which rests upon him of showing that his intestate was in the exercise of due diligence.

TORT, under the Pub. Sts. c. 112, § 212, by the administrator of the estate of James H. Tumalty to recover for the death of the plaintiff's intestate, who was killed on the tracks of the defendant's railroad on November 21, 1895.    Trial in the Superior Court, before *Hopkins*, J., who, at the close of the plaintiff's evidence, ruled that the action could not be maintained; and directed a verdict for the defendant.    The facts appear in the opinion.

*E. O. Shepard*, for the plaintiff.

*C. F. Choate, Jr.*, for the defendant.

LATHROP, J.    The plaintiff's intestate, at the time of the accident, and for four or five weeks before, was in the employ of the Union Switch and Signal Company, of Pittsburg, Pennsylvania, and with his fellow workmen was engaged in making changes in the switches and the apparatus connecting them with a signal tower.    This tower was on the main line of the Providence Division of the defendant's road.    The switch at which they were working at the time of the accident was in a track leading from the main lines to a round-house, a coal-dump, and ash-dumps, all of which were in a yard.    Trains of cars were constantly passing on the main tracks, and locomotive engines and cars were frequently passing the place of the accident.

Just before the accident, the plaintiff's intestate had been sent to the signal tower for some Carter pins. When he returned, Hart, who had charge of the gang, was on his hands and knees trying to put a pin in the track. It was then so dark that he had to feel where to put the pin. Some minutes before the accident the men had a torch, but it had gone out because there was no oil in it. When the men had previously worked after dark they had lamps with kerosene burners that gave considerable light. Hart was kneeling outside of the rails, facing towards the track. One Kilgarriff stood about two feet off towards Boston. The plaintiff's intestate, on returning from the tower, spoke to Hart, and then started to walk down the track between the rails, away from the engine. At this moment a switching engine backed down, with no light on the tender, and the bell was not ringing. The plaintiff's intestate was struck and killed.

The place where the accident happened was one of great danger even in the daytime, and the evidence is that the men were fully aware of this fact, and looked out for themselves. While it is true that the rules of the defendant required yard engines to carry two green lights, " except when provided with headlight on both front and rear," yet there is no evidence that the intestate knew of the rule. The evidence shows that the engine which caused the injury did not at any time carry green lights, although it had no light on the tender. The intestate could not, therefore, rely upon the warning which a light might give.

The plaintiff relies upon the evidence of Hart, who testified that the last time the engine passed before the accident he called out to the engineer and told him to look out for them when he came back ; and the plaintiff contends that the men at work had a right to rely upon the engineer's warning them when he again approached. But Hart also testified that he did not know that the engineer heard him. It also appears that when the engine passed before the accident it was just at dusk, and that when it returned it was very dark, and the men were at work without anything in the way of a light to indicate where they were.

The evidence shows that the plaintiff's intestate and his fel-

low workmen were taking no precautions whatever to guard against being run over, although an engine might be there at any moment. We are therefore of opinion that the plaintiff has failed to sustain the burden of proof which rested upon him of showing that his intestate was in the exercise of due diligence. *Lynch* v. *Boston & Albany Railroad*, 159 Mass. 536. *Sullivan* v. *Fitchburg Railroad*, 161 Mass. 125. *Galvin* v. *Old Colony Railroad*, 162 Mass. 533.

It is unnecessary, therefore, to consider whether there was sufficient evidence to warrant the jury in finding that there was gross negligence or carelessness on the part of the defendant's servants or agents.    *Exceptions overruled.*