### TOLEDO, ST. L. & W. R. CO. et al. v. BARTLEY.

(Circuit Court of Appeals, Sixth Circuit. July 22, 1909.)

### No. 1,918.

1. MASTER AND SERVANT (§ 137*)—INJURIES TO SERVANT—RAILROADS—OPERATION OF CARS—WARNING RULE—VIOLATION.

Movement of a string of freight cars on a storage track, in violation of a rule enacted to protect persons at work in the yard, requiring warning to be given that the cars were about to be moved, resulting in injury to plaintiff, a section water boy, constituted negligence sufficient to support a recovery therefor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269–278; Dec. Dig. § 137.*]

2. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—RAILROADS—CONTRIBUTORY NEGLIGENCE—FAILURE TO LOOK AND LISTEN—QUESTION FOR JURY.

Plaintiff, a section water boy, was injured by the sudden movement of a string of freight cars coupled together on a storage track, as plaintiff attempted to cross the track 10 feet from the end of the last car. There was a curve in the track, which, together with the train of standing cars thereon, and other cars on an adjacent track, obstructed the view and prevented seeing the approaching engine and cars by which the train was moved. Plaintiff had also for hours prior to his injury heard another engine working in and about the place from which the engine and cars were brought, nor was any warning given, as required by a rule, that the cars were about to be moved. *Held*, that plaintiff was not negligent as a matter of law in failing to look and listen before attempting to cross the track.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

3. MASTER AND SERVANT (§ 96*)—INJURIES TO SERVANT—RAILROADS—PERSONS LIABLE.

Where the S. Railroad Company used a railroad yard owned by the T. Company under a contract with the latter, and plaintiff, an employé of the T. Company, was injured by the movement of a train of cars on a storage track by an engine belonging to the S. Company, without warning, in violation of a rule, and the evidence was sufficient to justify an inference that both companies were negligent, the T. Company was not entitled to relief from liability, on the theory that it had leased the right to use its yards to the S. Company, and was therefore not liable for the latter's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 158; Dec. Dig. § 96.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This was an action brought in the Circuit Court of the United States, Northern District of Ohio, to recover damages for personal injuries. It was brought by Earl Bartley (a minor, 16 years old), through his guardian, against Toledo, St. Louis & Western Railroad Company and Detroit & Toledo Shore Line Railroad Company; jurisdiction having been obtained through diverse citizenship. The cause of action, in substance, was: That on October 19, 1905, under some contract not known to plaintiff, the defendants jointly used a

certain railroad yard, which was owned by the first-named company, at a place known as M. C. Junction, at Toledo; that plaintiff was in the employ of the first-named company as a water boy and helper to its section foreman; that it was the custom of the companies, before setting cars in motion, to give notice thereof to persons employed in the yard, which custom was well known to both defendants; that plaintiff, in the performance of the services required of him, started across the tracks in the yard to secure water for the men employed upon the section; that to do this it was necessary to cross various tracks; that, while he was attempting to pass over a track on which a number of cars were standing, plaintiff having no notice and being unable to see that the cars were about to be set in motion, the defendants wrongfully, carelessly, and negligently caused a locomotive with cars attached to be backed upon the track upon which these cars were standing, and to strike them with such force and violence as to drive them against plaintiff and cause four of the cars and part of the fifth to pass over him, to his serious injury; and that plaintiff was without fault.

The defendants filed separate answers, which were similar in all respects, except that the Toledo, St. Louis & Western admitted owning and operating the railroad yard, and that plaintiff was in its employ. Both companies denied negligence on their part and charged contributory negligence against plaintiff.

The cause was tried to court and jury, and resulted in a verdict for plaintiff. Motions for new trial were overruled, and judgment was entered upon the verdict. Both companies are prosecuting error in this court, with bill of exceptions containing the evidence and proceedings.

Charles A. Schmettau, for plaintiffs in error.
Charles A. Thatcher, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). There are five leading complaints of error. They relate, first, to the alleged custom or rule of the yard to give notice before commencing any movement of cars; and, second, to the court's refusal: (1) to direct verdict for both defendants; (2) either to grant special instructions stating, or in the general charge to state, that plaintiff was bound to look and listen before attempting to cross the track; (3) to grant certain special charges touching plaintiff's infancy; and (4) on its separate motion to direct verdict for the Toledo, St. Louis & Western on the ground that the only negligence shown was that of its codefendant.

The errors alleged will be better understood through brief description of the tracks of the yard and the location and use made of the track upon which the injury occurred, with an explanation as to the standing cars and the line of approach thereto by plaintiff and the line along which the moving engine and cars were driven, as these matters are disclosed by the evidence.

At the time of the accident there were 14 yard tracks south of the main line and 4 tracks north of it. These tracks ran approximately northeast and southwest. The tracks south of the main line were numbered from 1 to 14, commencing at the main track. The lead track, from which the yard tracks extended southwesterly, was located at the northerly end of the yard and curved northwardly. Tracks 12 and 13 were used mostly, if not entirely, for storage purposes and doubling in of trains. Cars containing grain were frequently stored on these

two tracks, and the grain was there inspected. The accident occurred on track 12, and at that time there were 18 refrigerator and furniture cars standing upon it. The distance between the point where plaintiff attempted to cross track 12, and the point in the lead track from which the moving engine and cars were brought upon track 12 is not certain, but must have been close to 1,000 feet. The cars of the standing train were connected by automatic couplers, and, according to the evidence, could be set in motion as a unit if struck by a moving train.

Plaintiff started from a point northeast of these standing cars, and, going in a southwesterly direction, crossed the yard tracks until he reached the standing train one car length from its southwest end. He stopped to read an advertisement on a car, and then walked to a point 10 feet beyond the end last mentioned of the standing train, when he attempted to cross the track and was injured. Shortly before plaintiff reached this point, a train belonging to the Shore Line Company had been divided by placing a portion of the cars on track No. 1, and the rest with the engine in rear were then moved to track 12, and were driven thence against the end of the standing train opposite to the end near which plaintiff was crossing the track. The standing train was struck with such force that four cars and a portion of the fifth were driven over plaintiff. This train had been kc₁ ₋ in that place, and plaintiff had seen it there throughout his employment, a period of nine days.

Under the issue as to a custom, rather a rule, to notify persons employed in the yard before moving cars once placed and left upon a yard track, there was conflict of testimony; some witnesses testifying that it originated in a purpose to protect all persons engaged or having business in the yard, and others that its object was to protect persons inspecting grain on cars stored on the track and persons working upon the cars themselves. But there was no conflict over the acts done under the rule, in this, that whenever a road engine and cars, as here, were taken upon a yard track on which there were standing cars, a man was sent to the further end of the standing cars to give warning. The court, in its charge, stated the claims of the parties respectively in regard to the rule, also that proofs had been offered by plaintiff in support of his claim, as well as by defendants in supp ₌rt of their claim. The court instructed the jury, in substance, that, if the claim of defendants were true, then that no negligence had been proved against them, and that plaintiff could not recover, but, on the other hand, stating:

"So, * * * the first question is: What was the rule or custom? And if the plaintiff, by a preponderance of the proof, * * * has made it appear that the rule or custom in that yard was as I have last stated it, that it was that a man should be sent down there for the purpose of warning anybody who might be on or near the track to prevent his being run over by the cars, then the plaintiff would have a right to recover in this case, unless he himself, as I shall define it to you, was not exercising ordinary care for his own safety."

In view of such submission and of the verdict, the issue of fact in this respect must be treated as determined in favor of the plaintiff. It was not claimed by the defendants that any notice or warning had

been given that the cars were about to be set in motion, and no such warning or notice was in fact given. The clear result of this was to find that both defendants were negligent.

Now, as to contributory negligence. Plaintiff testified that he did not look or listen for approaching cars when crossing the track, and this failure is claimed to be fatal to his right of recovery. Was the general rule to look and listen the only one by which plaintiff's conduct could be rightly tested?

There was testimony, including that of plaintiff, tending to show that to have looked or listened would have been futile. It appears that there was a curve in track No. 12, which, together with the train of standing cars thereon, and other cars on an adjacent track, obstructed the view and prevented seeing the approaching engine and cars; also, that plaintiff had for hours heard another engine working in and about the place from which the engine and cars mentioned were brought. With this obstructed view and the confusion of distant noises necessarily arising from the two engines, plaintiff, in the absence of warning or knowledge that any movement of the train of standing cars was intended, undertook to cross, not at the immediate end of the train, but at a point 10 feet away from it.

Despite the failure to look and listen, it will not do to say that plaintiff did not exercise any care and caution. It is plain enough that he would have crossed in safety if the train of standing cars had not been struck with extraordinary force and violence. There is no conflict in the testimony that the stroke was so sudden and unexpected that he had not time to escape. The evidence shows that, owing to the connecting automatic couplers, the effect of the stroke delivered at the further end of the train of standing cars was immediately communicated to the end which struck plaintiff. There is evidence, too, that the stroke was so great as to injure one or more of the cars.

Does such a case present a mere question of law, to be determined by the court? Or should it be governed, rather, by the class of decisions declaring, under the peculiar circumstances involved, that the conduct of the injured party presents a question of fact for submission to the jury?

In Cincinnati, N. O. & T. P. Ry. Co. v. Farra, 66 Fed. 496, 499, 13 C. C. A. 602, 605, this court had occasion to consider circumstances which would and would not present a question only of law touching the conduct of a person attempting to pass over a public railroad crossing, without looking and listening. Judge Lurton said:

"The only question arising upon the errors assigned is as to the contributory negligence of the defendant in error. Were the circumstances so clear, and the inference of law so plain, that the court should have instructed for the plaintiff in error? That the defendant in error did not stop for the purpose of looking and listening was an admitted fact. If the omission of that precaution was negligence per se, then the instructions asked for at the conclusion of the evidence should have been granted. To have given the instruction in the language of the request would have been equivalent to an instruction for the plaintiff in error, for there was no dispute as to the fact that Mrs. Farra's view of the track was obscured from a point 400 feet back on the road until her horse was upon the track, and in danger from a passing train. The request to charge as to the duty of stopping was rested upon the single fact that the view was obstructed."

After commenting upon Railway Co. v. Ives, 144 U. S. 408, 500, 12 Sup. Ct. 679, 36 L. Ed. 485, the learned judge further said (66 Fed. 500, 13 C. C. A. 606):

"It is true that in the Ives Case it did appear that the deceased had stopped some 80 feet before reaching the track, 'presumably to listen'; but it was also shown that from that place he had no view of the railroad, and could not get a view until he was within 15 or 20 feet of the track. He did not therefore avail himself of an opportunity to stop and look and listen at the only place near the crossing, familiar to him, which was available for observation."

Again (66 Fed. 501, 13 C. C. A. 606):

"Neither are we prepared to say that the duty of stopping is imperative in all cases where the track is obscured. There may be circumstances, as in the Ives Case and in the case at bar, where the duty is debatable, and proper for the consideration of the jury. Mrs. Farra's case presented quite as many circumstances calculated to modify the duty of stopping as were presented in the Ives Case, and we think should be controlled by that case."

That decision was considered again and approved by this court in Erie R. R. Co. v. Weinstein (C. C. A.) 166 Fed. 271, 273.

In McGhee v. White, 66 Fed. 502, 504, 13 C. C. A. 608, 610, Judge Taft announcing the opinion, the decisions in the Ives and Farra Cases were followed. That was an action of White, as administrator, against McGhee and Fink, receivers of a railway company, to recover damages for causing the death of one Kennedy. One circumstance requiring the case to be submitted to the jury was an obstructed view of approaching trains, and the other was the proximity of a second train following the first train and behind which Kennedy attempted to pass over the track. The learned judge said:

"* * * The evidence quite clearly establishes that Green Kennedy could not see the engine coming east until he was within 20 feet of the track, and until the engine was within 120 feet of the crossing."

Again (66 Fed. 505, 13 C. C. A. 611):

"Kennedy might therefore reasonably presume that, in the 40 yards he had to go to reach the track, another train would not pass the crossing. At least, this circumstance prevents us from holding as a matter of law that his failure to look was contributory negligence. It required the submission of the issue to the jury."

Baltimore & Ohio Railroad Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274, was another case of an obstructed view from the approach to a highway crossing, in which it was claimed that on the undisputed evidence the defendant in error was in law guilty of contributory negligence, and, consequently, that the refusal to direct a verdict was error. The decision in the Ives Case was followed.

In Northern Pacific Railroad v. Freeman, 174 U. S. 379, 384, 19 Sup. Ct. 763, 765, 43 L. Ed. 1014, a majority of the court held that the intestate of plaintiff below was as matter of law guilty of contributory negligence in approaching a railroad through a deep descending cut, where the track was not visible to one driving until he had reached a point about 40 feet from it; but in the course of the opinion the rule theretofore established in that court touching obstructions or peculiar

circumstances calculated to confuse or mislead was recognized. Mr. Justice Brown said:

"The cases in this court relied upon by the plaintiffs are all readily distinguishable, either by reason of the proximity of obstructions interfering with the view of approaching trains, confusion caused by trains approaching simultaneously from opposite directions, or other peculiar circumstances tending to mislead the injured party as to the existence of danger in crossing the track."

See, also, Bonnell v. Del., Lack. & West. R. R. Co., 39 N. J. Law, 189, 193; French v. Taunton Branch R. R., 116 Mass. 537, 540; Phillips v. Milwaukee & N. R. Co., 77 Wis. 349, 353, 46 N. W. 543, 9 L. R. A. 521; York v. Railroad Co., 84 Me. 117, 124, 24 Atl. 790, 18 L. R. A. 60.

It is true that the foregoing decisions relate to railway crossings of highways and to the duties of travelers on the highways in the circumstances there pointed out; but when it is sought, in the presence of the custom proved here, to apply the familiar and settled rule to look and listen under conditions not interfering with a useful exercise of those senses, there is no reason why there may not be exceptions to the rule in railroad yards any more than at railroad crossings. Indeed, Mr. Justice Brewer, in the Elliott Case (150 U. S. 245, 248, 14 Sup. Ct. 85, 86, 37 L. Ed. 1068), seemed to regard the duty of the traveler on the highway as similar to that of a railroad employé; for, in speaking of Elliott as an experienced railroad man, who "with nothing to obstruct his vision," started across the track with cars approaching within 25 or 30 feet of him, the learned justice said:

"But one explanation of his conduct is possible, and that is that he went upon the track without looking to see whether any train was coming. Such omission has been again and again, both as to travelers on the highway and employés on the road, affirmed to be negligence."

We do not overlook Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, in which the opinion was announced by the same learned justice. It was there said that the measure of duty to the plaintiff was not the same as it was to a passenger or stranger; but this is consistent with what was said in the Elliott Case, as just pointed out. This is made clear by the point recognized in Aerkfetz v. Humphreys, as well as in the Elliott Case, that one reason for holding the injured person guilty of contributory negligence was that there was nothing to obstruct the view. As said by Mr. Justice Brewer in the Aerkfetz Case (145 U. S. 419, 12 Sup. Ct. 836, 36 L. Ed. 758):

"The tracks were in a direct line east and west, with nothing to obstruct the view in either direction. * * * The cars were moved at a slow rate of speed, not greater than that which was customary, and that which was necessary in the making up of trains. For a quarter of a mile east of him there was no obstruction, and by ordinary attention he could have observed the approaching cars."

In Nelson v. N. O. & N. E. R. Co., 100 Fed. 731, 40 C. C. A., 673, plaintiff's intestate had been in the employ of the railroad company and engaged in mixing mortar and carrying it to a new depot, which required him to cross the main track of the road in going to the building, and while so doing he was killed by a passing train. Reference

was made to Railroad Co. v. Freeman, supra, and after quoting the portion set out in this opinion from Justice Brown's decision, Judge Shelby. said (100 Fed. 737, 40 C. C. A. 679) :

"This case indicates distinctly that, where there are obstructions interfering with the view of approaching trains, or other peculiar circumstances tending to mislead the injured party, the question of contributory negligence would at least be one for the jury."

Railroad Co. v. Margrat, 51 Ohio St. 130, 139, 37 N. E. 11, 12, involved the case of a brakeman, Margrat, who was directed to assist in coupling cars, and while on the main track was run down by a locomotive coming behind him. It was claimed that he should either have kept off the track or maintained a lookout for locomotives and cars. Although the syllabus (which under rule of that court is agreed upon by all the concurring judges) is silent upon the subject of duty to look and listen, in the course of the opinion Judge Bradbury said:

"We are not disposed to ignore or doubt the rule that, under ordinary circumstances, one who goes upon a railroad track should be held to the duty of using his senses of sight and hearing, and, if injured by reason of failing to do so, must abide the consequences; but this rule is not to be extended so as to deny, in all cases, relief to one who may be injured on account of such failure. Conditions may exist which will excuse him."

In view, then, of the peculiar circumstances of the present case, we are of opinion that plaintiff's failure to look and listen while approaching and attempting to cross the track ought not as matter of law to defeat his action. The defendants had voluntarily adopted a rule, called a "custom," for the protection of plaintiff, among others, which, if observed, would have prevented the injury. Plaintiff knew of this rule. The defendants chose to use tracks with curves, which, when occupied by cars, obstructed the view of engines with cars starting at the lead track and running toward the portion of the yard that plaintiff in discharge of duty was crossing. The cars had been standing on one of the two storage tracks without being moved during the period of plaintiff's employment. What would a reasonably prudent person of full age have anticipated, or what would such a person have done in attempting to pass over the track under such circumstances? Would looking and listening have availed anything? Would such a person have chosen a point more than 10 feet, as plaintiff selected, beyond the end of such standing cars to cross the track? If such a person had thought at all of the possible movement of the cars, or of their movement in violation of the rule, could he have rationally expected that this train of 18 cars would have been struck with such violence as to injure some of the cars, and project them in an instant four or five car lengths?

As it seems to us, enough has been said to show that the case falls well within the rule so often expressed, and as stated by Mr. Justice White in Warner v. Baltimore & Ohio Railroad Co., 168 U. S. 339, 348, 18 Sup. Ct. 68, 71, 42 L. Ed. 239 :

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury." Hackfeld & Co. v. United States, 197 U. S. 447, 25 Sup. Ct. 456, 49 L. Ed. 826.

Therefore the joint motion of defendants for a directed verdict was properly overruled. In the forms of the special instructions asked, defendants failed for the most part to make due allowance for the special circumstances and conditions under which plaintiff attempted to cross the track. This was especially so touching the general rule to look and listen. We think, however, that the court substantially complied with the requests of defendants in respect to any duty of plaintiff to look and listen, when it instructed the jury in effect that showing the existence of a rule to give warning before causing cars to be put in motion would not of itself excuse plaintiff's failure "to look at all" or to "concern" himself as to whether the last car would be moved. This instruction is to be considered in connection with the whole charge and with the conditions which manifestly interfered with the view and the hearing of plaintiff, and also with the undisputed fact that he chose a point for crossing 10 feet from the last car.

The claim that the jury should have been instructed as matter of law that plaintiff's responsibility was the same as that of an adult need not be considered. The special instructions asked did not, we think, present the question, and we do not discover that exception was taken to the general charge so far as it may be said to relate to plaintiff's infancy. Moreover, this court recently decided adversely to counsel's claim. Erie R. R. Co. v. Weinstein, supra.

The separate motion made by the Toledo, St. Louis & Western Railroad for a directed verdict was based on the ground "that the only negligence shown was that of Detroit & Toledo Shore Line Company." In support of this motion, counsel contend that the relation between the companies was that of lessor and lessee. Citation is thereupon made of the decisions which hold that a lessor company is not responsible to one of its own employés, for injuries suffered through the exclusive negligence of its lessee. The question argued under these citations does not arise. As pointed out in the statement, the precise relation between the two railroad companies is not set out in the pleadings; and, furthermore, it is not shown by the evidence. The decisive feature, however, is that it is a mistake to say that only the Shore Line Company was negligent. In addition to the inference of concurring negligence in defendant companies arising from the verdict, we think the evidence warranted the court in refusing to hold as a conclusion of law that the Shore Line Company alone was negligent.

We have considered all the assignments of error, and we are convinced that no prejudicial error occurred in the court below.

The assignments must be overruled, and the judgment affirmed.