MARY CASEY, administratrix, *vs.* BOSTON AND MAINE RAILROAD.

Worcester. November 22, 1918. — January 2, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Negligence,* Federal employers' liability act, Railroad, Proximate cause. *Proximate Cause. Evidence,* Relevancy and materiality, Statements to Industrial Accident Board, Self-serving statements, Admissions.

At the trial of an action against a railroad corporation by the administratrix of the estate of one who was killed while engaged in the performance of his duties as a signal foreman of the defendant's block signal system, there was evidence tending to show that rules of the defendant required the firemen upon its engines to keep a constant lookout when not firing and to be on the watch, if the engineman was obliged to look away from the track in front, until he could resume his lookout, to give instant notice to the engineman of any signals or indications of danger or of obstructions and to arrange the work so that fires would not need attention and that no other duties would interfere with their lookout when approaching stations or crossings. It appeared that when killed the plaintiff's intestate was inspecting a dwarf signal by a track near a station, and that he was struck by a freight train which emerged from under a bridge under which a passenger train had passed leaving a cloud of smoke and steam so dense that one could not see ahead from the freight engine for a distance of twenty feet. The fireman was not in his customary seat keeping a lookout, but was in the gangway

between the engine and the tender. *Held,* that there was no evidence that negligence on the part of the fireman caused the death of the plaintiff's intestate, since, if he had been on watch he could not have seen the plaintiff's intestate in time to prevent the accident.

For the same reason it was *held* that there was no evidence that the death of the plaintiff's intestate was caused by a failure of the head brakeman, who was sitting in the fireman's seat in the engine, to perform his duties, which were to be looking out ahead and to signal to any one from the engine and "to give a signal to get out of the way, if he saw. any one working on the track that apparently" the train was "getting too close to."

At the trial of the action above described there was evidence upon which the jury were warranted in finding that there was a custom among enginemen of the defendant, if they saw any one on the track, to sound the whistle, or, if the road could not be seen ahead, to "shut off steam and slow down," and that it was the engineman's duty to blow the whistle if he saw a man ahead or if he had reason to believe that a man was ahead who did not know of 'the train's approach. There was no evidence that the defendant had promulgated such a rule. *Held,* that there was no evidence warranting a finding that negligence of the engineman caused the death of the plaintiff's intestate.

At the same trial a witness testified that when the accident happened the train was late and was running "very much faster" than the witness "ever saw it go before." *Held,* that this evidence would not warrant a finding that the train was running at an excessive rate of speed.

An engineman of a freight train has a right, in the operation of his engine, to assume that signal men of his employer who are thoroughly familiar with the location of the tracks and the movements of both freight and passenger trains will take reasonable precautions to ensure their own safety.

It appeared that the defendant in the action above described, in accordance with St. 1911, c. 751, Part III, § 18, (as amended by St. 1913, c. 746, § 1,) made a report of the accident in which, on a blank furnished for the purpose, opposite the words "Describe fully how injury occurred," it stated "While attending to dwarf switches was struck by train and killed." This statement was introduced in evidence by the plaintiff. The defendant, subject to an exception by the plaintiff, thereupon was permitted to introduce in evidence a statement later filed with the board by the defendant as to the same accident and stating, opposite the same words, "Correct cause of accident is given as follows: Was undoubtedly running for a train and was struck by unknown train on other track." *Held,* that both reports properly were treated as one entire report filed in compliance with the statutes and that no error was shown.

It also was *held* that the statement in the second report, quoted above, was not an admission of negligence by the defendant, and was not to be excluded as a self-serving statement.

TORT, by the administratrix of the estate of Thomas Casey against a railroad corporation, under the federal employers' liability act, U. S. St. of April 22, 1908, c. 149, as amended by U. S. St. of April 5, 1910, c. 143, for causing the death of the plaintiff's intestate while employed by the defendant as a signal foreman of its block signal system and engaged in the

discharge of his duties near the defendant's station at Cambridge. Writ dated May 24, 1916.

In the Superior Court the case was tried before *Sanderson*, J. The first report by the defendant to the Industrial Accident Board of the accident in which the plaintiff's intestate was killed, referred to in the opinion, was dated June 5, 1914, and was introduced in evidence by the plaintiff subject to an exception by the defendant. After the words "Describe fully how injury occurred," it contained the words, "While attending to dwarf switches was struck by train and killed." Subsequently there was read to the jury at the request of the defendant and subject to an exception by the plaintiff the statement in a report to the Industrial Accident Board by the defendant on the same form as to the same accident dated June 10, 1914, where, after the words "Describe fully how injury occurred," the defendant stated, "Correct cause of accident is given as follows: Was undoubtedly running for a train and was struck by unknown train on other track." Other material evidence and the exceptions of the defendant are described in the opinion.

Upon a motion by the defendant at the close of the evidence, the judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

The case was submitted on briefs.

*J. M. Hoy* & *M. F. O'Connell*, for the plaintiff.

*C. M. Thayer, F. C. Smith, Jr.,* & *G. A. Gaskill*, for the defendant.

BRALEY, J. The plaintiff's intestate was employed by the defendant as a divisional or signal foreman of its block signal system. It was his duty within the territory assigned to him to supervise the maintenance of signals, for the proper operation of which he was personally responsible, and the jury upon conflicting evidence as to his movements could find, that while on the ground inspecting a "dwarf signal," or while on the track, he was struck by a passing freight train and instantly killed. The action is brought under the federal employers' liability act to recover damages for his death, and, a verdict having been ordered for the defendant, the case is here on exceptions to the order and to the exclusion and admission of evidence.

If it be assumed there was evidence that when killed he was engaged in interstate commerce, we are of opinion that on the

record there can be no recovery unless there is evidence which would have warranted the jury in finding that his death was caused "in whole or in part" by the negligence of his fellow employees. U. S. St. of April 5, 1910, c. 143. *Cruzan* v. *New York Central & Hudson River Railroad,* 227 Mass. 594. *Clapp* v. *New York, New Haven, & Hartford Railroad,* 229 Mass. 532. The negligence which is relied on is the failure of the fireman or of the engineman, or of the head brakeman who rode on the engine, to observe the intestate, and to warn him of his danger, or to reduce the speed, or to stop the train and avoid a collision.

It appears from the rules put in evidence relating to firemen that, "While engine is moving they will keep a constant lookout when not firing, and be on watch if the engineman is obliged to look away from the track in front until he can resume his lookout; — they must give instant notice to the engineman of any signals or indications of danger or obstruction, or if there is any reason to believe that train has struck any person or object on the track." "They must observe trains on other tracks to see whether they are carrying signals. They must observe their markers frequently and see that train is complete and in good order. They must arrange their work, especially on passenger trains, so that fires will not need attention and that no other duties will interfere with their lookout when approaching stations or crossings." The rules relating to whistling signals on approaching stations, junctions and railroad crossings at yards, and that a succession of short sounds of the whistle is an alarm for persons or cattle on the track, and that enginemen and firemen shall be on the lookout when engine or trains are approaching stations or crossings, and the enginemen are responsible for the speed of their trains also were introduced.

It is plain, however, that these rules are designed for the safe management and operation of the train and do not purport to be for the benefit or protection of track and signal men. *Sullivan* v. *Fitchburg Railroad,* 161 Mass. 125. *Porter* v. *New York, New Haven, & Hartford Railroad,* 210 Mass. 271, 274. *Cruzan* v. *New York Central & Hudson River Railroad,* 227 Mass. 594.

The fireman, engineman, and head brakeman were riding on the engine when the accident happened. The road consisted of four main tracks, and the uncontradicted evidence shows that a short

distance from the dwarf signal there was an overhead foot-bridge where the curvature was such that enginemen approaching the bridge from either direction were unable to obtain a full view of the tracks on the opposite side. A passenger train going east had just passed leaving in its wake a dense cloud of smoke and steam which completely overhung the tracks, into which the engine of the freight train going west entered as it came round the curve under the bridge. The fact that the fireman was not in his customary seat but stood in the gangway between the engine and the tender is of no consequence. Even if he had been seated and had failed to look out ahead, "the smoke and steam were so cloudy that you could not see anything ahead of you for a distance of twenty feet" when it would have been too late to have given any effective warning or to have stopped, or even so to have reduced the speed as to avoid the accident.

What has been said applies as well to the head brakeman who was sitting on the fireman's seat, and whose duties as described by him, "were to be looking out ahead and to signal to anybody from the engine, and to give a signal to get out of the way, if he saw any one working on the track that apparently we were getting too close to."

As to the engineman the jury undoubtedly could have found on the evidence, that it was the custom if he saw any one on the track to sound the whistle, or if the road ahead cannot be seen to "shut off steam and slow down," because "every railroad man relies on that custom for his own safety and the safety of the people he is taking care of." And that it was the duty of the engineman "to blow the whistle if he did see a man there, or he had reason to believe that a man was there who did not know that his train was coming." But there is no evidence that the road ever promulgated such a rule for the observance of enginemen, and, even if it had done so, the record fails to show that the engineman saw, or by the exercise of reasonable diligence could have seen, the intestate. Nor was it evidence of his negligence that the jury could have found that the train was late and running "very much faster" than the plaintiff's witness "ever saw it go before." It is not shown that the speed was excessive. See *Clapp* v. *New York, New Haven, & Hartford Railroad*, 229 Mass. 532.

The engineman furthermore had the right to rely on the pre-

534 CASEY *v.* BOSTON & MAINE RAILROAD. [231

sumption that the signal men, including the intestate, who are shown by the record to have been thoroughly familiar with the location of the tracks and the movements of both freight and passenger trains, would take reasonable precautions to ensure their own safety, and the jury in view of the atmospheric conditions would not have been warranted in finding that the engineman was negligent in failing to discover the presence of the intestate either at the signal, or on the track. *Cruzan* v. *New York Central & Hudson River Railroad,* 227 Mass. 594.

The engineman also testified, and his evidence was uncontradicted, that the engine bell operated by "an automatic ringer" continuously rang as he approached and passed the bridge and went by the signal and the station to the west of the bridge.

It would serve no useful purpose to enumerate and discuss in detail the numerous exceptions taken to the rulings relating to the exclusion of evidence offered by the plaintiff in so far as they have not been waived. We have examined all of them and find no reversible error. The plaintiff was given the benefit of every alleged relevant rule, and the rules or portion of rules excluded were wholly irrelevant when applied to the use of the track for freight trains where the accident happened, and the duties and conduct of firemen and enginemen under the conditions of operation previously described.

The judge also rightly excluded the portion of a time-table showing automatic, electric, semaphore and block signals located in connection with the station nearly a mile west of the switch where the freight train in question was not scheduled to stop.

The defendant in accordance with St. 1911, c. 751, Part III, § 18, and amendatory acts, made a report of the accident to the Industrial Accident Board. The plaintiff having been permitted subject to the defendant's objection and exception to introduce this report, the defendant was allowed to put in a second report, in which after the words, "Describe fully how injury occurred," the answer was, "Correct cause of accident is given as follows: Was undoubtedly running for a train and was struck by unknown train on other track." It is unnecessary to decide whether the first report was admissible, as the defendant is not the excepting party. But, as both reports were filed in compliance with the

requirements of the statute, they should be treated as forming one entire report, and the judge correctly ruled that this could be shown by the defendant.

The statement by the defendant in the report as the cause of the accident, "Was undoubtedly running for a train and was struck by unknown train on other track," is not an admission of its negligence.

*Exceptions overruled.*