## PACHECO v. NEW YORK, N. H. & H. R. CO.

(Circuit Court of Appeals, Second Circuit. November 1, 1926.)

No. 12.

1. **Master and servant** ⬅137(4)—Complaint alleging injury to section hand by cars backed without warning required by company's rules, held to state cause of action (Federal Employers' Liability Act [Comp. St. §§ 8657–8665]).

Complaint alleging section hand was injured by string of cars being backed on switch track without warning, required by company rules when starting or on crossing track immediately before injury, *held* to state cause of action under federal Employers' Liability Act (Comp. St. §§ 8657–8665).

2. **Courts** ⬅365.

State decisions relative to assumption of risk of violation of employer's rules are not authoritative in cases under federal Employers' Liability Act (Comp. St. §§ 8657–8665).

3. **Master and servant** ⬅265(13).

That injured section hand had no knowledge of company's rule requiring cautionary signal before moving cars is matter of defense, to be proven.

Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York.

Action under the federal Employers' Liability Act by Manuel Pacheco against the New York, New Haven & Hartford Railroad Company. Judgment dismissing the complaint, and plaintiff brings error. Reversed, and new trial ordered.

Writ of error to a judgment dismissing the complaint in an action at law to recover for personal injuries under the federal Employers' Liability Act.

The plaintiff was engaged in interstate commerce as a section hand of the defendant in Taunton, Mass. On the morning of the accident his foreman took him from the gang in which he was working and told him to spread over the roadbed an accumulation of dirt resulting from the excavation of a trench under and across the tracks. As he was so engaged he was struck by a shift of three freight cars backing down from a siding. The locus in quo was a freight yard, not very active, and the plaintiff stood near a switch which led from one of the main tracks to a series of sidings. The shift which struck him had stood for some time about 400 feet away from him on one of these, and was backing onto the main track. Beyond him, across the main track, ran a highway over which the shift backed after it had passed him.

There was no one on the rear of the cars to warn employees at work on the tracks, nor did the switching engine ring its bell, either when starting or before crossing the highway. The defendant had promulgated a rule that all engines must ring their bells when "about to move"; also that they must ring "on approaching every public road."

The learned trial judge dismissed the complaint at the close of all the evidence, on the ground that the plaintiff had assumed the risk of such an accident.

J. Arthur Seidman, of New York City (Humphrey J. Lynch, of New York City, and Sol. Gelb, of White Plains, of counsel), for plaintiff in error.

John M. Gibbons, of New York City (E. R. Brumley, of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] Except for the two rules mentioned above, the case would clearly fall within Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758, Boldt v. Pennsylvania R. R. Co., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385, and Chesapeake & Ohio Ry. Co. v. Nixon, 46 S. Ct. 495, 70 L. Ed. 914 (decided May 24, 1926). Apparently among the risks assumed is that of the inattention of other employees in train movements. Chesapeake & Ohio Ry. Co. v. Nixon was decided under the federal Employers' Liability Act and expressly reaffirmed Aerkfetz v. Humphreys; it is, of course, controlling. We are therefore absolved in this instance from a consideration of the niceties, if not casuistries, of distinguishing between assumption of risk and contributory negligence, conceptions which never originated in clearly distinguished categories, but were loosely interchangeable until the statute attached such vital differences to them.

A number of decisions in the Circuit Courts of Appeals under the Employers' Liability Act (Comp. St. §§ 8657–8665) have, however, created an exception to the ruling

in Aerkfetz v. Humphreys, when the plaintiff's fellow servants have failed to observe a rule or practice established by it for the protection of its employees. Lehigh Valley R. R. Co. v. Mangan, 278 F. 85 (C. C. A. 2); Director General v. Templin, 268 F. 483 (C. C. A. 3); Lehigh Valley R. R. v. Doktor, 290 F. 760 (C. C. A. 3); Toledo, etc., R. R. Co. v. Bartley, 172 F. 82, 96 C. C. A. 570 (C. C. A. 6); Baltimore & Ohio R. R. Co. v. Robertson, 300 F. 314 (C. C. A. 6); St. Louis & San Francisco Ry. v. Jeffries, 276 F. 73 (C. C. A. 8).

Just what is the ground of the distinction is not altogether apparent, though there would seem to be more warrant for supposing that one's fellows will observe an express rule or practice for specific action in a particular situation than that they will be uniformly attentive. Possibly it has arisen merely from a disposition to relax the severity of the rule. At any rate it has now become the established doctrine in four circuits without dissent, and, so far as we can see, had recognition by the Supreme Court in McGovern v. P. & R. Ry. Co., 235 U. S. 389, 35 S. Ct. 127, 59 L. Ed. 283, though the ruling is not so certain as we could wish.

The defendant argues, however, that under the settled law of Massachusetts such rules are for the protection of the train only, and do not therefore lessen the duty of employees to watch for their safety. That therefore under the law of Massachusetts the plaintiff at bar assumed the risk of a disregard of this rule, and cannot recover under Aerkfetz v. Humphreys. In Sullivan v. Fitchburg R. R., 161 Mass. 125, 36 N. E. 751, a trackman was killed by an engine which was "running wild," as to whose operation there was proof of negligence, or at least it must be so understood from the disposition of the case. A rule requiring that "wild" locomotives "must run cautiously around curves and over grade crossings, looking out for trackmen," was held to be for the benefit of the train, and not of trackmen, whose duty to watch was not changed. In Porter v. N. Y., N. H. & H. R. R. Co., 210 Mass. 271, 96 N. E. 680 the rules promulgated by the defendant are not stated, and we have no means of knowing what they prescribed, except the statement in the opinion that they were not designed for the protection of trackmen. In Morris v. B. & M. R. R. Co., 184 Mass. 368, 68 N. E. 680, two rules required trains to blow a whistle and ring a bell while rounding curves, and were held not to be for the benefit of trackmen. Cruzan v. N. Y. C. & H. R. R. R., 227 Mass. 594, 116 N. E. 879, and Casey.

v. B. & M. R. R. Co., 231 Mass. 529, 121 N. E. 403, each arose under the federal Employers' Liability Act, and in each the court held that there was no evidence of the defendant's negligence. It is true that in the first a rule requiring enginemen to watch for danger signals or obstructions was said not to be for the benefit of trackmen, as it clearly was not.

In none of these cases, so far as appears, was there involved a rule which prescribed a specific cautionary signal designed for the protection of the men. It may therefore be that in Massachusetts the law is not different from that in the federal cases cited above, though it must be owned that in the face of Sullivan v. Fitchburg R. R. it is hard to suppose so. As res integra it seems to us plain that at least the rule at bar was intended to protect not only the train crew but those trackmen who might be working near by; certainly we cannot think that it was intended to protect the train. If the Massachusetts common law is different, with the greatest respect we cannot accept it, unless it is authoritative.

[2] As to the measure of the defendant's negligence, we cannot see any peculiarity in the Massachusetts law. At least it has never been there suggested that a train crew would not be negligent which ran down a trackman in broad daylight, on a clear day and a straight track, by backing down upon him a shift of cars slowly moving along a siding. The doctrine, if it be applicable at all, affects only the question of whether the trackman assumes the risk of the violation of a rule which prescribed a cautionary signal in such a situation. On that point we think that the state decisions are not authoritative, because the question is not of Massachusetts common law, but of the meaning of a federal statute. The defendant retorts that even so the statute merely says that assumption of risk shall be a defense, and leaves the interpretation of that phrase to the local common law where the event occurred.

This argument is exactly answered by Pryor v. Williams, 254 U. S. 43, 41 S. Ct. 36, 65 L. Ed. 120. There the defendant had pleaded assumption of risk as a defense in an action in a Missouri state court. The Supreme Court of that state decided that the plaintiff's failure to inspect a defective tool which he was using was contributory negligence, not an assumption of risk, and affirmed the trial court's charge, which had left it to the jury to reduce his damages accordingly. This was reversed on writ of error. The language of Mr. Justice McKenna may perhaps be read as supposing that the Supreme

Court of Missouri misunderstood the effect which the Employers' Liability Act gave to a workman's assuming the risk, but the opinion of the state court (272 Mo. 613, 200 S. W. 53) shows beyond peradventure that that was not the fact. That court expressly held that the meaning of assumption of risk was to be determined by Missouri common law, regardless of other jurisdictions, and that under that law it only covered cases where the servant was not himself negligent. Thus the decision in the Supreme Court of the United States was on all fours with that at bar; it declined to interpret the phrase in accordance with the local law, and applied its own notion of the meaning of the words used by Congress.

We regard the same doctrine as involved, though the cases are not on the facts so expressly in point, in Central Vermont Ry. v. White, 238 U. S. 507, 35 S. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252, New Orleans & N. E. R. R. Co. v. Harris, 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167, New Orleans & N. E. R. R. Co. v. Scarlet, 249 U. S. 528, 39 S. Ct. 369, 63 L. Ed. 752, and Yazoo & M. V. R. R. Co. v. Mullins, 249 U. S. 531, 39 S. Ct. 368, 63 L. Ed. 754. It is quite true that, in construing the phrase "next of kin" in this act, the local statutes control. Seaboard Air Line v. Kenney, 240 U. S. 489, 36 S. Ct. 458, 60 L. Ed. 762. But different considerations apply there. That phrase has a statutory, not a common-law, provenience, and there is no federal statute to define it. To say that it embodied the Statute of Distributions of England as it was in 1789 was naturally thought to impute an absurd intention to Congress.

We cannot agree that our present decision overrules or in any way affects our ruling in B. & M. R. R. Co. v. Daniel, 290 F. 916, a case in which the liability arose under the common law of Vermont, where the accident took place.

[3] Finally, the defendant argues that it is not shown that the plaintiff knew of the rule or acted in reliance upon it. Assuming that to be a relevant fact, which we do not decide, it was matter of defense, which must be proved.

Judgment reversed, and new trial ordered.

HOUGH, Circuit Judge (dissenting). If plaintiff had brought suit in the courts of the state where his cause of action arose, he would have been defeated, even though he sued under the Federal Employers' Liability Act. Casey v. Boston & Maine R. R. Co., 231 Mass. 529, 121 N. E. 403.

The reason for such defeat would have been that defendant's employees, by violating the rule referred to, had been guilty of no negligence in respect of this plaintiff, and negligence of the defendant is by the act a prerequisite for recovery.

But negligence, though such prerequisite, is not defined by the act. Therefore by every canon of construction the statute must mean common-law negligence, and it has been often said that the United States has no common law.

The majority opinion is a very good example of the process of building up what may fairly be called a common law for the United States courts; i. e., a kind of federal interpretation of some common legal word, which is or may be at variance with the meaning of that word as accepted by the state courts.

Some legal difficulties or contradictions cannot be avoided under our dual system of government, but it is surely the duty of all courts to minimize rather than magnify them. Under the rule announced by the majority, the United States District Court sitting in Massachusetts must reject the Massachusetts rule because it is not in harmony with the decisions of United States courts sitting in other states, on which point it may be noted that all the federal decisions cited were made in supposed harmony with the law of the state where the cause of action arose.

So it seems to me that the rule evolved from them is unwarranted, nor can I perceive that Pryor v. Williams, 254 U. S. 43, 41 S. Ct. 36, 65 L. Ed. 120, has any application, for it relates to assumption of risk, a phrase which by the very statute giving rise to the cause of action is differentiated from contributory negligence, and it was for a refusal to submit to that differentiation that the decision below was reversed.

This case is a simple illustration of how judges must make law, because in respect of the violation of certain kinds of rules negligence means one thing in Massachusetts and another in most of the rest of the country. We must decide whether it is better for the community to make negligence mean one thing in the state courts of Massachusetts and another thing in the United States courts sitting in the same state, or to let the unfortunate difference of meaning affect both state and federal courts geographically. To my mind the latter course is better for the common weal, and we preferred it in Boston & Maine R. R. Co. v. Daniel, 290 F. 916, a decision reached after much reflection, and now in substance overruled, though formally differentiated, in itself an unfortunate result.

Both on reason and what has hitherto been authority, I dissent.