James Lyons, Appellee, v. Joseph T. Ryerson & Son, Appellant.

### Gen. No. 14,436.

1. MASTER AND SERVANT—*who not fellow-servants.* A servant is not the fellow-servant of another if at the time of his injury in the performance of his regular duties he was not brought into contact or association with such other servant.

2. MASTER AND SERVANT—*limitation of duty of former.* If a servant is voluntarily at a place where his duty does not call him his master owes him no duty at that place to furnish him a reasonably

safe place to do work which does not fall within the line of his duty and in the doing of which he is a mere volunteer.

3. MASTER AND SERVANT—*when latter may properly leave his usual post.* A servant is justified in leaving the place where he is working and in entering upon another portion of the premises of his master if in doing so he is seeking to avert what threatens to be a disaster both to himself and others in his vicinity.

4. MASTER AND SERVANT—*failure to observe custom.* If it has become customary to give a particular signal a servant has a right to rely upon the giving of such signal, and if his injury results from a failure to give such signal a recovery will be sustained.

5. INSTRUCTIONS—*when giving of abstract proposition of law will not reverse.* An instruction which states a correct proposition of law will not reverse if it does not tend to mislead.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed May 3, 1909.

H. B. BALE and MORSE IVES, for appellant.

RICE & O'NEIL, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an action on the case for personal injuries, by the servant, against his master. The injuries are claimed to have been suffered while the servant was working in the discharge of the duties which had been assigned to him by the foreman under whose direction he was working at the time he was injured. The master is said to be answerable in damages for such injuries to the servant because, it is said, the master failed to furnish the servant a reasonably safe place in which to work. The accident happened upon Sunday, July 2, 1905, and the declaration of one count charges that plaintiff was in the employ of defendant as a common laborer and was engaged in repairing a certain railroad track in defendant's machine shop and near to a certain car upon which defendant was loading a large amount of iron by means of a travelling crane, and that defendant so carelessly and neg-

ligently loaded the iron upon the car and so negligently managed the travelling crane that a chain attached thereto became entangled with said iron and said car and lifted up and tilted the car so that the iron thereon fell over and upon plaintiff and injured him. The general issue was the plea interposed by defendant, and upon the issues so joined the cause proceeded to trial before the court and a jury, resulting in a verdict of $2,500, upon which the court entered judgment after denying motions for a new trial and in arrest of judgment. Defendant appeals and argues for a reversal of the judgment, upon errors duly assigned, that there is no evidence tending to prove the negligence alleged; that according to the testimony of plaintiff his sole duty at the time in question was to repair the track at a place different from the point on the track at which the injury occurred; that he was at the track where he sustained his injuries as a mere volunteer, at which place defendant owed him no duty; that by the manifest weight of the evidence, the chain must have become entangled in the iron by reason of carelessness in handling it, in which plaintiff participated; that the negligence, if any, was that of a fellow servant, and that the court erred in giving instruction No. 1 proffered by plaintiff.

It appears from the evidence that at the time of the accident plaintiff was working in a building divided into two large rooms by a partition running north and south at about the middle; that there was an opening through the partition between eight and twelve feet in width; that there was a truck standing on the track about fourteen feet west of the opening; that over the truck there was a cage, in which the operator of the crane was located; that plaintiff was directed by his foreman, Anderson, to repair certain tracks and was at work putting in new pieces of track between the two rooms; that after the iron was put upon the truck, plaintiff observed the truck to move slightly; that the truck was on a slight incline, and

that he arrested its motion by putting a block at one of its wheels; that while he was standing at the truck for the first time, plaintiff noticed the hoist coming over him; that he endeavored to escape by running toward the wall; that the chain caught in the iron, causing it to fall on him as it went upward. Plaintiff swears that he had nothing to do with the hoisting of the iron out of the truck and took no part in placing the chain which hoisted the iron around it; while Rens, defendant's witness, swears that plaintiff placed the chain around the iron, so that the truck could be moved away toward the east, and that prior thereto Rens and plaintiff had loosened the chain from the iron. The probative force of the evidence and the credit to be given the testimony of the several witnesses was the province of the jury to determine, and whether the plaintiff was a fellow servant of the men employed on the truck and the crane at the time of the accident, was likewise a question of fact for the jury.

Plaintiff's ordinary duties were those of a "chipper," but on the Sunday when he was injured he was engaged in track work, which was different in character from that of his usual employment. Neither his work as a "chipper" nor in repairing the track necessarily brought him into contact or association with the workers on the crane or truck, so that it could be said that plaintiff was a fellow servant with the crane and truck workers. Nat'l Enameling Co. v. McCorkle, 219 Ill. 557. But plaintiff has placed himself upon the horns of two dilemmas (a very dangerous position) when he contends that he was not a fellow servant of the crane and truck men, and yet invaded their place of work in the discharge of the duties of his employment. It is clear the latter contention puts him forth in the light of a fellow servant, and if not, then being voluntarily at a place where his duty did not call him, the master owed him no duty at that place to furnish him a reasonably safe place to do certain work which did not fall within the lines of his

duty or employment, and in the doing of which he was a volunteer. C. C. & St. L. Ry. v. Carr, 95 Ill. App. 576. We do not, however, think these considerations influenced the jury in arriving at their verdict. What impresses us, and what, in all probability, impressed the jury, was that a condition of danger noticed by the plaintiff was present, threatening peril to himself and others working upon the tracks with him, which he sought to avoid by blocking the wheel of a truck on a track in alignment with the place where he was working. This truck was heavily loaded with angle iron, and plaintiff says it rested on a slight incline and had started to move. If this account is true, then he was justified in leaving the place where he was working and invading the field of operation of the truck and crane men to avert what threatened to be a disaster both to himself and others working in his vicinity. Barry v. St. J. & H. R. R. Co., 98 Mo. 62; 20 Am. & Eng. Ency. Law, 149. But the evidence supporting plaintiff's contention is in much conflict and in some of its parts seems unreasonable. That the motion down an incline of a truck loaded with iron weighing two tons could have been arrested by placing a block at one of its wheels seems incredible, especially so when it is borne in mind that plaintiff had some twenty feet to travel after the truck started to move before he could apply the block. Then again, plaintiff disclaims having participated in "hooking the chain" onto the iron, while Balfanz swore that plaintiff did hook the chain onto the iron, and Sheski swears that plaintiff and Rens unhooked the chain, which being immediately hauled up by the crane, caught in the iron, tipping some of it onto plaintiff. The witness Evert made a sworn statement out of court, that plaintiff unhooked the chain from the iron, but afterwards retracted such statement on the witness stand. This leaves the proof in these very important particulars in a highly unsatisfactory condition, and to our minds more in consonance with a verdict for the de-

fendant than plaintiff, and although were we jurors such would have been our conclusion on this disputed evidence, still the jurors' advantage from seeing the witnesses and observing their manner when testifying being so much better than ours, we are inclined to yield to their finding and leave the responsibility where the law places it, as we do not feel justified in holding that the verdict is so manifestly contrary to the preponderating weight of the evidence that it ought to be set aside. Then there is another phase of the case which is somewhat controlling. There is proof· that it was customary for some one to give an audible signal to the man in charge of the crane, and that on the occasion under consideration no such signal was given. Had the customary signal been given, plaintiff would have had an opportunity to seek a place of safety. Starting the crane without giving any signal was negligence contributing to the accident. Such negligence is imputable to the master because the crane man and plaintiff were not fellow servants.

The defense is somewhat contradictory in one very. material matter, which may have led the jury, as they lawfully might, to disregard all the evidence of defendant's witnesses on this subject. Balfanz swore that he saw plaintiff "put the chain on the hind end of the angle iron to move the truck away to the east, then the load tipped over." Rens testified that Sheski and plaintiff were in charge of the load on the truck, and that he, Rens, unhooked the chain and then motioned the crane man to pull up the chain; while Sheski swears that both Rens and plaintiff unhooked the chain from the load. These discrepancies in the testimony of these witnesses were of such importance that they may have led the jury to disregard them altogether as being so much out of harmony as to be unreliable, and have influenced them to adopt the testimony of plaintiff as most worthy of belief and containing a truthful account of what really occasioned the accident.

Defendant contends that instruction 1, given to the jury at the request of plaintiff, constitutes reversible error.  It is as follows:

·  "The jury are instructed that where the negligence of the master is combined with the negligence of a fellow servant in producing the injury, and the negligence of neither is the efficient cause, the master is liable."

The instruction states a correct but abstract proposition of law, which the court might have refused, but which it was not error to give if it had any application to the facts in evidence fairly tending to support the theory announced in that instruction.  Much has been and still may be said on further review *pro* and *con* as to the applicability of the instruction in question to the case in hand.  From certain viewpoints of the evidence it has some application, but looking at it broadly it has none.  We are not able to discover, however, that its effect upon the jury was seriously prejudicial to the defense made or violated, to its detriment, any legal right of defendant.  While not at all confident of the wisdom of this conclusion, we do not feel warranted in reversing a judgment and awarding a new trial for the giving of an instruction stating an abstract proposition of law couched in technical legal language, which in all probability the jury did not comprehend, especially when the jury were so carefully and liberally instructed at the instance of defendant as to every phase of the law to be applied to the evidence under the defenses interposed.

Substantial justice appearing to have been attained by the judgment of the Superior Court, it is affirmed.

*Affirmed.*