## McKee v. Cincinnati, Flemingsburg & Southeastern R. R.

(Decided January 24, 1913.)

### Appeal from Fleming Circuit Court.

1.   Railroads—Injury to Employee in Coupling Cars—Action for In-
jury—Assumed Risk.—Where appellant, an employee of appellee,
acting as fireman, attempted to couple two dead cars under the
specific orders of his superior who was standing near and in a posi-
tion to protect him, and was injured by a backing train, striking
the cars, it was the master who assumed all risk on behalf of
appellant and it was error to peremptorily instruct the jury to find
for the defendant.

2.   Railroads—Injury to Employee in Coupling Cars—Gross Negligence.—It matters not how long it took appellant to make the coupling. If his superior knew that he had gone in between the cars a short time before and did not know he had emerged therefrom, it was the grossest negligence for him to permit the engine and cars to back into the cars that were being coupled and thereby necessarily injure appellant. Appellant had a right to rely upon his superior to give the necessary signals to the engineer, or to warn him of his danger in time to allow him to make his escape.

J. H. POWER, PAUL HEFLIN, SCOTT & HAMILTON, for appellant.

JOHN P. McCARTNEY, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellant in September, 1910 was injured at Flemingsburg by the backing in of an engine on to a side track and against some freight cars, between two of which, he was at the time coupling the air brakes. He was 43 or 44 years of age and had been an employee of the Company, for some twelve or thirteen years in various capacities, and acted in almost any subordinate capacity when called on. He was not the regular fireman on appellee's train, but the day of his injury, by reason of illness or absence of the regular fireman, was acting in that capacity on the train which runs from Flemingsburg to Johnson Junction. He had gone as fireman on the morning run from Flemingsburg to Johnson and return, and the train was making up or switching preparatory to take the afternoon run, the train leaving at 12:40 or 12:45 p. m.

Upon the trial of the case in the lower court, a peremptory instruction was given to find for the defendant upon the close of the plaintiff's testimony, and the correctness of that ruling is the only thing necessary to consider on this appeal. The petition alleges in substance, that while they were switching preparatory to the afternoon run, that Dudley, the Superintendent of defendant Company, directed the plaintiff to go between two freight cars that were standing on the switch and couple the hose on the air brakes, and that in order to carry out that order it was necessary for him to go in between the cars and stoop over so as to reach the coupling of said hose; that at the time there were several cars on the side track placed in such position as to prevent his seeing the engine and cars which were switching on the main track, and that at the time he went in between the cars, the engine and cars on the main track were going

away from him and not coming in the direction of the switch where he was coupling the hose, and that he could not have seen the engine and cars on the main track while he was engaged in attaching the hose in accordance with said order.

That Dudley, the Superintendent, was standing at some distance from said cars along the main track of defendant's road, and saw or by reasonable diligence could have seen the engine and cars on the main track, which were then being operated by the engineer and which while plaintiff was coupling the air brakes, without the knowledge of plaintiff, began to run back in the direction of plaintiff, and that Dudley was in a position to warn plaintiff of his danger while he was engaged in obeying the order, but did not do so. The answer of the defendant admits that Dudley, the Superintendent, ordered the plaintiff to couple the air brakes on the cars, but denies that plaintiff did so; and further admits that Dudley was in a position to see and did see the engineer running said train on to said switch, and could have signaled to the engineer to stop said train, but denies that he knew that the plaintiff was between the cars.

The defendant pleaded contributory negligence and that appellant assumed the risk usually incident to his employment. Appellant on the trial testified in substance, that he was given the order by Dudley to couple the air brakes; that the engine was up in the depot or in that direction on the main track; that after Dudley gave him the order, and as he went in between the cars to execute it, Dudley started in the direction where the engine was; that it was necessary in executing the order to go in between the cars and stoop over, and that he had to get pretty near the center of the cars, as the air brakes which had to be coupled were on each side; and that the two cars between him and the engine prevented him from seeing the engine even if he had looked, and that as he went in between the cars, the engine was going up the track towards the depot; that immediately after the accident, Dudley came walking toward him from the direction of the depot, and that Dudley was between the main track and what is called the college track.

Mr. Charles M. Lee, the County Court Clerk of Fleming County, testified that immediately after the accident, he was near there and saw Superintendent Dudley on the

main track thirty or forty yards from the frog and about opposite where McKee was. So we have the admission in the answer, that Dudley ordered appellant to go in between the cars and make the coupling; that Dudley was in a position to see and did see the train coming down the main track on to the side track, and gave the train officials no signal to stop the train; and we have the statement of appellant, that he went in between the cars to make the coupling in the presence of Dudley, a short time before the accident, and that Dudley knowing that he had gone in between the cars, saw the train backing on to the switch, and gave him no notice nor took any step to save him from injury; in addition to that, we have the statement of Mr. Lee, that immediately after the accident, Mr. Dudley was in such position as to have seen the train coming down the main track, and was also near appellant and on the main track about opposite to where appellant was on the side track.

The record does not disclose the ground upon which the peremptory instruction was given, but from the arguments in the briefs, we infer it was upon the idea, that appellant in his capacity as employee had assumed the risk incident to his employment, and could not, therefore, recover. The doctrine of assumed risk has no place under such state of fact; the appellant was acting directly and immediately under the specific orders of his superior; he knew that his superior officer was near by, and in position to protect him from any danger; he had gone between the cars in the presence of Dudley and Dudley was in position to know that he had not come from between them. Appellant knew that Dudley was in position to protect him and had a right to rely upon that fact. Under the facts stated, if true, it was the master who assumed all risk on behalf of the servant.

It may be that appellant was an unusual length of time in making the coupling of the air brakes, and that Dudley assumed from the time that had passed that appellant had made the coupling, and had come from between the cars; but it matters not how long it took him to make the coupling, if Dudley knew that he had gone in between the cars a short time before and did not know that he had emerged therefrom, it was the grossest negligence for him to permit the engine and cars to back on that switch and into the cars on it, and thereby necessarily injure appellant. There is some evidence that about

the time or immediately after the accident, Dudley was seen making some train signals, and if it should turn out upon a retrial of this case, that before the accident, Dudley did undertake by signals to prevent the train from backing on to the switch where appellant was engaged in coupling the air brakes, then the court will under the amended pleading filed herein, instruct the jury upon the liability of the defendant upon the theory of the engineer's failure, if any, to heed these signals.

The case of the City of Owensboro v. Gabbert 135, Ky., 346 was where a workman of mature age, was engaged in excavation work in the City of Owensboro, and acting under the direct orders of his superior, continued to work in the excavation after he himself knew that there was danger of a cave-in, and the court in that case in dealing with the question of assumed risk, laid down this rule, to-wit:

"The rule in this state is that when the place in which the servant is engaged in working is not such as imposes upon the master the full duty of providing a safe place, but is somewhat hazardous or dangerous, although not obviously so, or the danger of continuing is not so apparent that a person of ordinary intelligence would not undertake it, and the servant is assured, in substance or effect, by the master, who is present, that it is reasonably safe or that there is no danger, or is directed by him to go on with the work, the servant may recover for injuries received, although the risk or hazard in prosecuting the work is as well known to the servant as it is to the master. When the master is present, the doctrine of equal knowledge and assumed risk that is sometimes invoked in cases like this to relieve the master, should be sparingly applied. The position of the two is very different, and out of this difference grows the right of the servant to depend upon the master, if he be present directing the work, as he has a right to presume he will warn him of danger and save him from needless exposure to injury, or death."

But this case is a much stronger one for the employee than that; for here there was no danger in going between two dead cars on a side track, except the danger that the train which was switching on the main track might back onto that track; and appellant knew that his superior, Dudley, was in a position to protect him from that danger, and had a right to absolutely rely upon his doing so,

either by giving the necessary signals to the engineer, or warning him of his danger in time to have allowed him to escape.

Treating the evidence introduced for appellant as true, the case should have been submitted to the jury.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.