LON BOWMAN, Respondent, v. THE MARCELINE COAL & MINING CO., Appellant.

Kansas City, Court of Appeals, March 3, 1913.

1. **EVIDENCE: Statements: Hearsay.** Evidence given by a witness that another person, not the plaintiff, had said to the witness, when the latter asked how the accident occurred, "I hallowed to Lon that the cage was gone" was, under the circumstances under which it was given, mere hearsay. Although such person had testified that he did not halloo to the plaintiff, this did not make the statement competent since no foundation was laid for contradicting the one said to have made such statement. Nor was the testimony sought to be elicited for this purpose.

2. ——: **Excluding Answer: No Proffer Nor Showing Made.** The exclusion of an answer to a question will not work a reversal of a case where there is nothing to show what the answer, if it had been admitted, would have been. It is the duty of the party, alleging error because of excluded evidence, to indicate, by an offer to the trial court, what the evidence is.

3. ——: **Opinion of Witness.** A witness, after testifying that defendant's engineer once told him he had nervous spells, further testified that he had known the engineer for twenty years and that his record as an engineer was good, and was then asked whether he considered the engineer "a good safe man." He had already testified to the experience, competency and sobriety of the engineer, and it was neither necessary nor the province of the witness to answer a question which, in the form it was asked, was really, "In your opinion is the engineer a man that would be negligent or careful on this occasion?"

4. **NEGLIGENCE: Assumption of Risk.** Where plaintiff's injury was not the result of dangers inherent in the nature of his employment but was the result of defendant's negligence in raising and lowering the cage without a signal, there is no assumption of risk in the case. A servant does not assume risks caused by his employer's ngligence. He assumes only the risks which are liable to happen on account of the nature of his employment when the master has used the care that the law requires of him.

5. ———: **Contributory.** A cager having to rapidly push a loaded car on to a cage saw the cage in position and started his car to it, leaning far forward with his hands wide apart on the car to exert the necessary force; he knew the car would not move until he gave a signal or first received one from the engineer. Just as the car started to go upon the cage, the latter was suddenly raised about ten feet, remained there just long enough to allow the car to fall into the space it had just vacated, and then was immediately lowered again striking and injuring plaintiff, and both movements without signal. *Held*, that plaintiff was not guilty of contributory negligence in not keeping his eye on the cage or in not stopping to see if the cage would remain in position.

6. ———: **Failure to Use Signals: Statute.** Regardless of whether the statute, Sec. 8456, R. S. 1909, required signals for the safety of the cagers, yet, as the evidence showed a system of signals was in use in the movement of the cages, it was negligence to move them without giving the customary signals. To move the cage up and down suddenly and without warning to the men working on the cage would be the grossest negligence.

## Appeal from Livingston Circuit Court.—*Hon. Arch. B. Davis*, Judge.

AFFIRMED.

*A. W. Mullins, C. M. Kendrick, F. S. Hudson* and *John L. Dean* for appellant.

*Bresnehen & West* for respondent.

TRIMBLE, J.—Action for damages on account of personal injury sustained by plaintiff while working in defendant's mine. The jury awarded $1000, and defendant appeals. The injury came about in this wise:

Defendant's coal shaft had two cages, known as the east and west cage, attached to a cable coiled upon a drum in such way that, when the engine rotated this drum so as to raise one of the cars, it lowered the other. The engine was on top of the ground about fifty feet from the mouth of the shaft. When one cage reached the top with a loaded car, the other cage was at the bottom with an empty. Two men, known as "cagers," were stationed at the bottom, one of which would immediately rush the empty off the cage and, the moment it cleared the track leading to the cage, the other man would push a loaded car upon the cage. When this loaded car reached the top, the other cage would be at the bottom with an empty which would be taken off by the man, who had just caged the loaded car now at the top, and the other man would push a loaded car into the cage. Thus they would rapidly alternate as the cages went up and down. Whenever a cage reached the bottom it stayed there and was not moved until the cager with a loaded car had got it securely on the cage and gave the signal (one pull on the bell) to the engineer to hoist the cage. No one else had any right to give this signal except the cager who put on the loaded car. This signal was given by pulling a wire which ran from the bottom of the shaft to the top and thence to a bell in the engine room. After a cage was started on its way to the top by one pull on the bell, another pull would stop the cage wherever it was and two pulls would cause the engineer to lower it back to the bottom. And if a cage had been stopped thus in its ascent, the engineer had no right to lower it until he got the necessary two bells, and these could be given only by the cager at the bottom. However, if the engineer desired to hoist the cage without a signal from the cager, he was required to give one blast on his whistle as a warning to the cager below that he was about to move the cage. And if, after hoisting the

168 Mo. App. 45

cage for a distance in this way, he stopped the cage, he was required to give two blasts on the whistle before lowering it back to its place.

Plaintiff was one of the two cagers at the bottom of defendant's shaft. The west cage came down with an empty car. Plaintiff's associate cager immediately pushed the empty off the cage along the west track leading from it, and the moment it got in the clear, plaintiff pushed a loaded car, standing on the east track, through the switch to the west track and thence to go upon the cage. While he was thus engaged in pushing the car, with his hands and arms wide apart and leaning forward to exert the considerable force required, the cage, without a signal from anyone at the bottom and without a whistle from the engine, was suddenly raised about ten feet from the bottom of the shaft, remained there just long enough to allow the car plaintiff was pushing to fall into the space vacated by the bottom of the cage, and then, before plaintiff could recover from his stooping posture or the momentum of his body, in time to get out of the way, the cage was suddenly lowered into place without signal or warning whistle of any kind. The descending cage struck plaintiff on the head and injured him.

The negligence alleged was in suddenly raising the car without a signal being given to the engineer or a whistle being received from him, and the lowering of the car without signals.

The court did not err in sustaining the objection to the evidence of P. J. Kelly, defendant's witness, as to what Phil Bowman said to him when he asked Phil how the injury happened. Phil was not the plaintiff, and in the connection in which this testimony was given by Kelly, Phil's statement to him was purely hearsay. Kelly was being examined as to what plaintiff said when Kelly visited him at his home after the injury and Kelly, in answer to that question, interpolated a statement that Phil had told him before he.

Kelly, saw plaintiff "that he (Phil) had 'hallowed' to Lon that the cage was gone." It is true Phil did say that he did not halloo to Lon. But Phil was never asked if he made to Kelly the statement in question. Hence no foundation was laid to impeach Phil and the excluded evidence was not admissible.

Nor was reversible error committed by the court in sustaining plaintiff's objection to the question asked Kelly, "At whose request was it, if anybody's, that he (plaintiff) was working at this job of extra caging?" First, because there was no offer to show the court what the answer would have been. If we should reverse the case for this alleged error the witness' answer may turn out to be that he, Kelly, requested it or some one else in authority. A mere refusal to hear an answer is not alone sufficient to constitute error, but it is the duty of the party alleging error to indicate what the evidence is which he proposes to elicit. [State v. Arnold, 206 Mo. 1. c. 597; State v. Insurance Co., 140 Mo. App. 1. c. 159; Louis v. Louis, 134 Mo. App. 1. c. 575.] It may be that the words "if anybody's" in the question show that the answer would be that no one requested plaintiff to act; but if so, it does it by inference and not affirmatively. But the exclusion of this evidence need not be justified on this ground alone, if that be too narrow. Under the facts in this case the evidence was not material. Plaintiff was employed in the mine and usually was engaged in other work, but he was an experienced cager and understood that work and was working as an "extra cager." There is no evidence showing that this was more hazardous or required more skill than the work he usually did. The evidence was sought to be elicited on the theory that it bore on the question of assumption of risk. But there is no assumption of risk in this case. Plaintiff's injury was not the result of the inherent dangers of his employment, but the result of either the defendant's negligence in raising and lowering

the cage without a signal, or of the plaintiff's negligence. The jury found that defendant was negligent and that plaintiff was not, and that the injury was caused by defendant's negligence. A servant does not assume risks caused by his employer's negligence. He assumes only the risks which are liable to happen on account of the nature of the employment when the master has used the care that the law requires of him, under the circumstances, to avoid the result. [Curtis v. McNair, 173 Mo. 270.]

The witness Spies, after testifying that the engineer told him on one occasion that he sometimes had nervous spells, testified, on cross-examination by defendant, that he had known the engineer's record for twenty years and that his record was good, and was further asked if he, the witness, considered him, the engineer, "a good, safe man." To this plaintiff objected and was sustained. There was no reversible error here. The witness had just said the engineer had a twenty years' record as a good one: In doing this he testified to the experience, competency and sobriety required by the statute. [Sec. 8457, R. S. 1909.] In the form the question was asked it really meant "In your opinion is the engineer a man that would be negligent or careful on this occasion?" Having testified to the engineer's experience and good record it was neither necessary for the witness, nor his province, to give the jury his opinion on the subject of the engineer's care.

Plaintiff's instruction No. 1, is unobjectionable. It does not permit him to recover if he voluntarily or negligently assumed an unsafe position, but conditions his right to recover upon a finding that he was "without any fault or negligence on his part." And if anything more specific than this was needed, it was supplied by defendant's instructions as to plaintiff's contributory negligence. Nor is it open to the objection because the whistle signals, to be given by the engi-

neer, were not for the cagers. The evidence shows otherwise. To move the cages up and down at will, and without notice or warning to the men working on the cage, would be the grossest sort of negligence, and if the signal in use by the engineer was in fact no signal at all, the defendant's negligence is still more apparent. We think the evidence shows that the signals could be heard at the bottom of the shaft, but if they could not, defendant is in a worse position than if they could.

Nor should a demurrer have been sustained on the ground that defendant owed no duty to signal plaintiff before moving the cage. The signals required by section 8456, Revised Statutes, Mo. 1909, are for the benefit of everyone who can be protected by them whether *on* the cage or working about it. Without regard to the statute, a system of signals being in use, it was negligence to move the cage without giving the signal. The case is not founded upon the statutory duty to inaugurate a system of signals. The question of plaintiff's contributory negligence was properly submitted to the jury. He was doing his work in the usual and ordinary way, and was in a stooping position, his body leaning forward as he necessarily had to do. The work was moving rapidly. He saw the cage at the bottom and started pushing his heavy car onto it. He knew the cage would not move until he gave a signal or unless he heard the engineer whistle. That he did not stop and carefully examine to see if the car was still in place would not make him guilty of contributory negligence as matter of law. The case is not like those where a person attempts to cross a track without looking. We fail to see any evidence showing contributory negligence but, if there is, the jury's verdict has settled that.

Plaintiff was struck across the head with the heavy cage, knocked back several feet, rendered partially unconscious, suffered a gash several inches long across

the scalp, which was pushed backwards; he was disabled for a month, and has since suffered with headache from the effects of the blow. In such case we cannot say $1000 is excessive. Judgment affirmed. All concur.