## ST. LOUIS & S. F. RY. CO. v. JEFFRIES.

(Circuit Court of Appeals, Eighth Circuit.   October 24, 1921.)

No. 5649.

1. **Master and servant ⬅⮞286(30)—Custom to give signal before increasing speed of train held for jury.**

   In an action under federal Employers' Liability Act (Comp. St. §§ 8657–8665) for injuries to a brakeman thrown from the train when the engineer increased the speed without giving signal according to a custom shown by plaintiff's witnesses, *held* that the existence of the custom was a question for the jury, though defendant's witnesses testified that they did not observe any such custom.

2. **Customs and usages ⬅⮞6—Custom need not be shown to have become a rule of the common law.**

   In action under federal Employers' Liability Act (Comp. St. §§ 8657–8665) for injuries to brakeman sustained when engineer started train forward at increased rate of speed without giving signal according to alleged custom, plaintiff, in proving custom, was not required to show the custom so completely as would be required in showing the custom to have become a rule of the common law.

3. **Master and servant ⬅⮞135, 150(1)—Omission of customary signals and warnings negligence.**

   A servant has the right to rely on signals and warnings customarily given in the conduct of the business in which he is engaged, and master's failure to give such signals and warnings constitutes negligence.

4. **Master and servant ⬅⮞258(18)—Complaint held to plead locomotive enginer's duty to give signal.**

   In an action under federal Employers' Liability Act (Comp. St. §§ 8657–8665) for injuries to a brakeman thrown from a train when engineer increased the speed without giving the customary signal, complaint *held* sufficient to plead engineer's duty to give signal.

5. **Trial ⬅⮞260(8)—Refusal of instructions on railroad's negligence held not error in view of other instructions.**

   In an action under federal Employers' Liability Act (Comp. St. §§ 8657–8665) for injuries to a brakeman thrown from the train when the engineer increased the speed without giving the customary signal, refusal of requested instructions that, if engineer was not negligent, the verdict should be for the railroad regardless of the contributory negligence of the brakeman, *held* not error, in view of other instructions to such effect.

6. **Trial ⬅⮞296(4, 5)—Instruction not erroneous as practically eliminating defenses in view of other instructions.**

   In an action under federal Employers' Liability Act (Comp. St. §§ 8657–8665) for injuries to brakeman thrown from a train when the engineer increased the speed without giving the customary signal, instruction *held* not erroneous as practically eliminating defenses of plaintiff's negligence and assumption of risk, in view of other instructions as to such defenses.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action by Andrew N. Jeffries against the St. Louis & San Francisco Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

⬅⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. F. Evans and E. T. Miller, both of St. Louis, Mo., for plaintiff in error.

Sidney Thorne Able and Charles P. Noell, both of St. Louis, Mo., for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and LEWIS, District Judge.

CARLAND, Circuit Judge. Jeffries, hereafter called plaintiff, sued the railway company, hereafter called defendant, under the federal Employers' Liability Act (35 Stat. 65 [Comp. St. §§ 8657–8665]), to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. There was a verdict and judgment for the plaintiff. Defendant sued out a writ of error. The alleged negligence of defendant is stated in plaintiff's complaint as follows:

"Plaintiff further states that on or about the 24th day of October, 1917, he was in the employ of the defendant as a brakeman, and that while he was so employed on the said day it was necessary for the plaintiff to throw a certain switch to permit the train on and about which the plaintiff was working to move off of a siding at Menfro, Mo., onto the main line; that in pursuance to said duty he threw the switch and permitted the train to move out on the main line; that it then became and was the duty of the conductor on the said train to reline the switch after the train had passed upon the main line and that he in pursuance to said duty relined the switch; that it then became and was the duty of the engineer on the said train either to stop the train or to let the train drift along without giving it any more steam at all until the engineer received a signal from the plaintiff that the plaintiff was ready to have the engine given steam, ready to have the train to proceed, and it was then the duty of the engineer after receiving such signal from the plaintiff not to give the engine steam or in any manner start the train forward at a faster rate of speed until after the engineer had given the usual and customary signal of two short blasts signifying that he was about to give the engine steam and proceed on the journey, and plaintiff further states that while he was stationed on top of one of the cars in the train the conductor threw the switch and got upon the train and that the plaintiff gave a signal to the engineer to proceed, and further states that he received no response from the engineer to indicate that the engineer was about to proceed, and plaintiff further states that thereafter and while he was waiting for such signal from the engineer to indicate that the engineer was about to proceed, he, the plaintiff, was moving over the top of the train toward the engine, and that as the plaintiff was at the end of one of the cars moving over to the car nearer to the engine, that train was suddenly caused to move forward at a greatly increased rate of speed, causing a sudden, violent, and unusual jerk and taking out of the slack of the train, causing the plaintiff to be thrown from the said car to the ground and to be run over and injured as hereinafter stated.

"Plaintiff further states that his said injuries were caused by the carelessness and negligence of those in charge of the movements of the said train in suddenly permitting, allowing, and causing the train to start forward at an increased rate of speed without first having given the usual and customary signal that the train was about to proceed, and by reason of their negligence in causing such violent, unusual, and sudden jerk of the train."

Defendant by its answer denied generally the allegations of the complaint and pleaded contributory negligence and assumption of risk. The first alleged error assigned is that the trial court erred in refusing to direct a verdict for the defendant because the alleged cus-

tom was not proven. The position of counsel is illustrated by the following language taken from their brief:

"The situation therefore presented is that two or three witnesses for the plaintiff testified that there was such a custom, while six or seven witnesses for the defendant testified that there was not; and there is absolutely no evidence in the record to disprove the positive testimony of some of defendant's witnesses who stated that they did not observe any such custom in increasing the speed of their trains. The result therefore is as stated in the Lindeman case that there 'was uncontradicted evidence that the custom to which the witnesses for the plaintiff testified was not uniform, and hence that it was not binding.' If it should be contended that where there is contradictory testimony as to the existence of a custom, it is the province of the jury to determine if the custom in fact exists, yet where there is uncontradicted testimony as existed here that the alleged custom was not uniform, it is the duty of the court to so declare."

[1-3] The first position would render it impossible to ever establish a custom if some witness whose orthodoxy in telling the truth would permit him to deny that there was such a custom as claimed, for if the proposition is sound it must be just as sound with one witness as seven. We do not think it can be claimed that because certain witnesses testified that they did not observe any such custom that the evidence as to custom was uncontradicted in view of counsel's statement "that two or three witnesses testified that there was such a custom." The second proposition is to the effect that if it is claimed that where the existence of a custom is in issue the question may be one for a jury, still such a rule would not apply in the present case, because there was uncontradicted evidence that the custom was not uniform. An examination of the evidence of the plaintiff and his witnesses convinces us that counsel are mistaken when they say that there was no evidence that the custom was uniform. We are of the further opinion that it was not incumbent on plaintiff to show such a custom as would make it a rule of the common law. A servant has the right to rely on signals and warnings customarily given in the conduct of the business in which he is engaged, and if the master fails to give these, he is negligent. Anderson v. Northern Mill Co., 42 Minn. 424, 44 N. W. 315; Burlington, etc., R. Co. v. Crockett, 19 Neb. 138, 26 N. W. 921; Hough v. Grants Pass Power Co., 41 Or. 531, 69 Pac. 655; Andreson v. Ogden Union R., etc., Co., 8 Utah, 128, 30 Pac. 305; Lyons v. Ryerson, 148 Ill. App. 284; Jones v. R. Co., 149 Ky. 566, 149 S. W. 951; Hines v. Mfg. Co., 199 Mass. 522, 85 N. E. 851; Fitzgerald v. Twine Co., 104 Minn. 138, 116 N. W. 475; Schoen v. R. Co., 112 Minn. 38, 127 N. W. 433, 45 L. R. A. (N. S.) 841; Lancaster v. R. Co., 143 Mo. App. 163, 127 S. W. 607; Germanus v. R. Co., 74 N. J. Law, 662, 67 Atl. 79; Ondis v. Tea Co., 82 N. J. Law, 511, 81 Atl. 856, 46 L. R. A. (N. S.) 777; Baccelli v. Delaware, etc. Co., 138 App. Div. 623, 122 N. Y. Supp. 849; R. Co. v. Bartley, 172 Fed. 82, 96 C. C. A. 570; R. Co. v. Dutcher, 182 Fed. 494, 104 C. C. A. 438; Allard v. Contract Co., 64 Wash. 14, 116 Pac. 457; McKee v. R. Co., 151 Ky. 698, 152 S. W. 759; McCalley v. R. Co., 169 Ky. 47, 183 S. W. 234, L. R. A. 1916F, 551; Taber v. R. Co. (Mo.) 186 S. W. 688; Bowman v. Coal, etc., Co., 168 Mo. App. 703, 154

S. W. 891; Huxoll v. R. Co., 99 Neb. 170, 155 N. W. 900; Curran v. R. Co., 211 N. Y. 60, 105 N. E. 105; Cement Co. v. Brown, 45 Okl. 476, 146 Pac. 6; Maness v. Coal Corp., 128 Tenn. 143, 162 S. W. 1105.

In Fletcher v. Baltimore & Potomac R. R. Co., 168 U. S. 135, 18 Sup. Ct. 35, 42 L. Ed. 411, the uncontradicted evidence showed the following facts:

"The defendant had been in the daily habit for several years of running out of Washington and Alexandria a repair train of open flat cars loaded with its employees, and the train returned every evening about 6 o'clock and brought the workmen back to their homes. These men were allowed the privilege of bringing back with them, for their own individual use for firewood, sticks of refuse timber left over from their work after repairing the road, such as old pieces of bridge timber, cross-ties, etc. It was the constant habit of the men during all these years to throw off these pieces of firewood while the train was in motion at such points on the road as were nearest their homes, where the wood was picked up and carried off by some of the members of their families or other person waiting there for it. The only caution given the men on the part of the servants or agents of the company was that they should be careful not to hurt any one in throwing the wood off. The foreman of the gang was the man who usually gave such instruction."

The trial court directed a verdict on this evidence for the railroad. The Supreme Court reversed this action of the court and in doing so said:

"We feel quite clear that, from the evidence in this case, it was for the jury to say whether the custom was sufficiently proved."

[4, 5] Both counsel for plaintiff and defendant and also the court used the case of C., M. & St. P. Ry. Co. v. Lindeman, 143 Fed. 946, 75 C. C. A. 18, decided by this court, as stating the rule which should govern the present case. When rightly interpreted we do not think that case would compel a direction of a verdict in favor of the defendant in this case because the alleged custom had not been proven. We have carefully read the evidence and are of the opinion that the question as to whether the alleged custom was proven was a question for the jury. It is next claimed that there was no evidence consistent with well-known physical laws and facts that the train sustained a sudden, violent, and unusual jerk; but an examination of the evidence shows this contention to be wrong. There was positive evidence that the train did suddenly start forward and that there was such a jerk as claimed. Also evidence that such a jerk was possible under the circumstances. It is next insisted that as it was admitted that the engineer did not receive the proceed signal he could not have violated the alleged custom. We think this is giving a wrong construction to the claim of the plaintiff. According to plaintiff's contention, the engineer had no right to suddenly increase the speed of the train without he first received a signal from the plaintiff. The complaint fairly pleads the duty of the engineer in such a situation. Plaintiff complains of the refusal of the trial court to give instructions requested by it numbered 14 and 15. Request No. 14 concluded with the words "then your verdict must be for the defendant." No. 15 contained the words:

"Before plaintiff can recover in any event you must believe from the evidence that the engineer of the defendant on said train was guilty of negligence as herein defined which caused or contributed to cause his injury."

The trial court charged the jury if they believed from the evidence that the injury to plaintiff arose through his own fault, and through no fault or negligence of the engineer as the court had already explained to them, then their verdict should be in accordance with the rule touching contributory negligence which the court should thereafter give them. It is claimed that the court should have stated to the jury that if the engineer was not negligent their verdict should be for the defendant regardless of the contributory negligence of the plaintiff. The court, however, in many other places stated just what counsel for defendant contends for. To illustrate, in many places in the charge is found language like the following:

"If, upon consideration of all of the evidence, you believe that the defendant's engineer was not guilty of any negligence, as hereinafter defined, or if upon this issue the evidence is evenly balanced, and if you are unable to determine in whose favor the same preponderates, then your verdict ought to be for the defendant."

[6] The use of the language to which counsel for defendant objects was caused no doubt by the doctrine of comparative negligence established by the Employers' Liability Act. It is next claimed that the court's charge limited the defendant to a general denial of the allegations of the petition. practically eliminating the defenses of plaintiff's negligence and assumption of risk. In one place in the charge is found the following language:

"From what I have said to you, gentlemen, you will readily appreciate that there are but two issues in this case. One of those issues is whether the custom contended for by the plaintiff existed. The other is whether the failure to observe that custom, after you have found it existed, concurred with or acted with a sudden, violent, and unusual jerk of the train, so that thereby plaintiff was thrown off, run over and hurt. That is all there is left in this case. The other questions in it, according to my view, and I say to you the subjects on those points have been disposed of by admissions or proof which is not contradicted in this case—I say this to you because I want you to devote your considerations to these points. I shall have more to say about that custom and about that jerk hereafter in my charge."

Standing alone this portion of the charge might be subject to criticism; but, when the whole charge is examined, all of the defenses that the defendant had were repeatedly stated to the jury and the rules of law governing the same. It was admitted that the train carried interstate commerce, and that plaintiff was an employee of the defendant. The engineer admitted that he did not give the two short blasts of the whistle and also testified that he was under no duty to do so. The conductor also testified that he did not hear or remember of hearing the two short blasts of the whistle after he saw the plaintiff give the proceed signal. The trial court did, in another part of its charge, state to the jury that by virtue of plaintiff's employment in a business universally believed, and known to be hazardous, he assumed all the risks, dangers, and hazards properly and necessarily incident thereto, and then stated that if plaintiff's injury was caused by any

jerk necessary and incident to the operation of the train as it was then situated and then being operated the plaintiff could not recover, but before he could recover, he must show both the custom which was followed and the unusual and unnecessary jerking which caught him off his guard because of the violation of the custom to acknowledge the signal. The court also stated to the jury that there was a plea in the case and therefore an issue of contributory negligence, and also charged the jury if they found that the acts and conduct of the plaintiff contributed to the cause of plaintiff's being thrown from the train and being injured thereby, then they were charged that plaintiff was guilty of negligence which contributed to cause his injury. The court further said:

"I think it is clear to the jury that plaintiff cannot recover in this case if there was no negligence on the part of defendant. If the hurt accrued to him solely by his own negligence of course he cannot recover. I think I made that clear. I labored to make it clear."

We do not deem it necessary to cite authorities in support of the proposition that counsel may not select particular portions from the charge for the purpose of assigning error, but the whole charge must be taken together, and if it appears that the case is fully and fairly stated, the mere fact that certain passages standing alone would be subject to criticism is not important. The jury in this case were told that they must take the charge as a whole, and we have no doubt that the charge as a whole fully, correctly, and fairly presented the case to the jury. As there does not appear to be any prejudicial error in the record, the judgment below is affirmed.

The Judges who heard this case all concurred in the decision thereof and the reasons therefor, but Judge HOOK deceased before the opinion was prepared.